**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **BOBBY WAYNE EDGAR,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:22-cv-00620-KFP** |
| | ) | |
| **MARION B. BRUNSON,** | ) | |
| **et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT**

COUNSEL FOR DEFENDANTS MARION B. BRUNSON, JUSTIN A. SPENCE,
ANTHONY TEW, AND THE CITY OF ELBA:

James H. Pike
SHEALY, PIKE & HORNSBY
P.O. Box 6346
Dothan, Alabama 36302-6346
Tel. (334) 677-3000
Fax (334) 677-0030
jpike@shealypikelaw.com

## Table of Contents

I. Introduction ........................................................................................................... 1

II. The Pertinent Facts ................................................................................................ 1

    A. Narrative Summary of the Pertinent Facts ........................................................ 2

        1. Officer Brunson gave Edgar at least eleven chances to go to the hospital, but Edgar refused to go and committed at least eight crimes. ................... 2

        2. Edgar started fighting and actively resisted arrest.................................. 10

    B. The exhibits disprove many of the amended complaint's allegations........................... 16

        1. Edgar did not tell the Officers that he wanted to go to the hospital. ...................... 16

        2. The Officers had not made up their minds about arresting Edgar before they contacted him. ........................................................................ 21

        3. Edgar physically resisted arrest. ....................................................... 22

        4. The Officers did not beat Edgar. ....................................................... 22

    C. Ataxia does not explain Edgar's impaired judgment and erratic behavior...................... 23

    D. Edgar's Claims .............................................................................. 24

III. Analysis .......................................................................................................... 25

    A. The Failure-to-State-a-Claim Standard ............................................................ 25

    B. The Exhibits................................................................................... 26

        1. The Court may consider the police report because the amended complaint incorporates the police report by reference. ........................... 26

        2. The Court may consider the body-worn camera videos because they are central to Edgar's claims and they are public records of which the Court may take judicial notice........................................................... 27

        3. The Court may consider the Taser activity download because the amended complaint incorporates the Taser activity by reference and the download is a public record of which the Court may take judicial notice. .................................................................................. 28

    C. The Court should dismiss all fictitious party claims because the amended complaint's description of the fictitious parties is not sufficiently clear to allow service of process................................................................... 29

D.   The Federal Claims..............................................................................30

   1.   The Officers may invoke qualified immunity because they acted within their discretionary authority. ...................................................................30

   2.   Count Two does not state a Fourth Amendment false arrest claim and the Officers are entitled to qualified immunity. ......................................31

      a)   Edgar did not plausibly demonstrate that the Officers lacked probable cause to arrest him for being a pedestrian on a roadway. .................32

      b)   Edgar did not plausibly demonstrate that the Officers lacked probable cause to arrest him for failure to obey a police officer. ...................34

      c)   Edgar did not plausibly demonstrate that the Officers lacked probable cause to arrest him for public intoxication.......................................35

      d)   Edgar did not plausibly demonstrate that the Officers lacked probable cause to arrest him for being a pedestrian under the influence. ......................................................................................39

      e)   Edgar did not plausibly demonstrate that the Officers lacked probable cause to arrest him for criminal trespass in the third degree. .....................................................................................39

      f)   Edgar did not plausibly demonstrate that the Officers lacked probable cause to arrest him for disorderly conduct—unreasonable noise. .......................................................................................41

      g)   Edgar did not plausibly demonstrate that the Officers lacked probable cause to arrest him for disorderly conduct—fighting or tumultuous behavior.......................................................................43

      h)   Edgar did not plausibly demonstrate that the Officers lacked probable cause to arrest him for resisting arrest...............................................44

      i)   The Officers are entitled to qualified immunity because Edgar did not plausibly demonstrate that his arrest violated a clearly established Fourth Amendment right. ................................................44

   3.   Count One does not state a Fourteenth Amendment equal protection claim and the Officers are entitled to qualified immunity.......................46

   4.   The amended complaint does not plead a Fourth Amendment excessive force claim and the Officers are entitled to qualified immunity. ...........48

      a)   The Court cannot infer a Fourth Amendment excessive force claim on Edgar's behalf. ................................................................................48

    b)   Edgar did not plausibly demonstrate that the Officers used constitutionally unreasonable force.................................................. 49

    c)   Edgar did not plausibly demonstrate that the Officers' use of force violated a clearly established Fourth Amendment right. ............................... 51

   5.  Count Four does not state a Fourteenth Amendment medical deprivation claim and the Officers are entitled to qualified immunity. .................. 51

    a)   Edgar did not plausibly demonstrate that the Officers violated a Fourteenth Amendment right. .......................................................... 52

    b)   Edgar did not plausibly demonstrate that the Officers violated a Fourteenth Amendment right that was clearly established. ............................ 61

E.   The State Law Claims ................................................................................. 61

   1.  The Officers may invoke peace officer immunity because they acted within their discretionary authority. ........................................................ 61

   2.  Count Three does not state a claim for assault-and-battery and the Officers are entitled to peace officer immunity. ...................................... 64

    a)   Count Three does not plead factual allegations that plausibly demonstrate assault-and-battery......................................................... 64

    b)   The Officers are entitled to peace officer immunity because Count Three does not state an assault-and-battery claim upon which relief can be granted and because Edgar did not plausibly demonstrate that an exception to immunity applies. ........................................... 65

   3.  Count Seven does not state a wantonness claim and Officer Brunson is entitled to peace officer immunity. ......................................................... 66

    a)   Count Seven does not plead factual allegations that plausibly demonstrate wantonness.................................................................. 66

    b)   Officer Brunson is entitled to peace officer immunity because Count Seven does not state a wantonness claim upon which relief can be granted and because Edgar did not plausibly demonstrate that an exception to immunity applies. ......................................... 67

F.   The City of Elba ......................................................................................... 68

   1.  Even if Edgar had asserted a claim against the City, the City would be entitled to municipal immunity against punitive damages...................... 68

2.    Counts One, Two, and Four do not state § 1983 municipal liability
      claims. ...................................................................................................... 69

3.    Even if Edgar had asserted a state law claim against the City, the City
      would not be liable because the Officers did not commit an underlying
      tort. ........................................................................................................... 70

4.    Even if Edgar had asserted a state law claim against the City, the City
      would be entitled to peace officer immunity. ............................................ 71

5.    Even if Edgar had asserted a state law claim against the City, the City
      would be entitled to municipal immunity. ................................................. 71

IV.    Conclusion ........................................................................................................... 72

Certificate of Service ...................................................................................................... 73

## I.    Introduction

This civil action arose from plaintiff Bobby Wayne Edgar's June 22, 2021 arrest on charges of public intoxication, disorderly conduct, and resisting arrest. (Doc. 26 at 5, ¶ 19; Doc. 26 at 10, ¶ 81.) On October 18, 2022, Edgar brought this suit against the City of Elba and Elba police officers Marion B. Brunson, Justin A. Spence, and Anthony Tew (collectively "the Officers" and, along with the City, "the Defendants") alleging civil rights violations and supplemental state law tort claims. (Doc. 1.) On December 5, 2022, the Defendants moved to dismiss the complaint for failure to state a claim. (Docs. 13, 14.) Edgar responded to the motion on January 6, 2023. (Doc. 21.) On January 22, 2023, the Defendants replied to Edgar's response. (Doc. 24.) On May 19, 2023, the Court construed Edgar's response as containing a motion for leave to amend and granted Edgar until June 2, 2023 to file an amended complaint. (Doc. 25.) Edgar filed an amended complaint on June 2, 2023. (Doc. 26.) The Defendants now move to dismiss the amended complaint. This Memorandum explains why the amended complaint does not state a claim against any of the Defendants upon which relief can be granted.

## II.    The Pertinent Facts[1]

This summary of the pertinent facts begins with a narrative of the incident that is based on the nonconclusory factual allegations found in the amended complaint and five exhibits that the

---

[1] Except where contradicted by one of the exhibits, this Memorandum recites the amended complaint's factual allegations because they are ordinarily the operative facts for a motion to dismiss. *See Speaker v. U.S. Dep't of Health and Human Servs. Ctrs. for Disease Control and Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010) ("In ruling on a 12(b)(6) motion, the Court accepts the factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff."); *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1219 (11th Cir. 2007) ("an amended complaint supersedes the initial complaint and becomes the operative pleading in the case"). Where a conflict exists between the amended complaint and one of the exhibits, however, this Memorandum credits the exhibit. *See F.T.C. v. AbbVie Products LLC*, 713 F.3d 54, 63 (11th Cir. 2013) ("We . . . treat specific facts demonstrated by exhibits as overriding more generalized

Court may consider at the motion-to-dismiss stage—the police report and Taser activity that the amended complaint incorporates by reference and three police videos. After the factual narrative, this summary identifies four of the amended complaint's factual allegations that the exhibits refute. Then this summary addresses Edgar's medical condition. Finally, this summary identifies Edgar's claims.

## A.    Narrative Summary of the Pertinent Facts

On June 22, 2021, residents on Cedar Lane Drive in Elba called the police on Edgar. (Doc. 26 at 6, ¶¶ 19-21.) When Officer Brunson arrived, Edgar was wrapped in a blanket and staggering in the middle of the road. (Doc. 26 at 5, ¶ 22; Ex. 1 at 2.) Edgar told Officer Brunson that he had COVID-19 and was dying. (Doc. 26 at 5, ¶ 23; Ex. 1 at 2.)

### 1.    Officer Brunson gave Edgar at least eleven chances to go to the hospital, but Edgar refused to go and committed at least eight crimes.

At Officer Brunson's request, Edgar sat on a curb to await the arrival of an ambulance. (Ex. 1 at 2.) At the time, Edgar was compliant. (Ex. 1 at 2.) When the ambulance arrived, Edgar answered the medics' questions and was loaded onto a stretcher for transport to a hospital. (Ex. 1 at 2-3.) That was Officer Brunson's **first offer of medical aid to Edgar**.

Instead of going to the hospital, however, Edgar became combative and climbed off the stretcher. (Ex. 1 at 3.) Edgar said he wanted to call his mother in Kinston. (Ex. 1 at 3.) When Officer Brunson told Edgar that he could call his mother from the hospital, Edgar staggered away from the medics shouting incoherently. (Ex. 1 at 3.) Reminding Edgar that he could call his mother from the hospital was Officer Brunson's **second offer of medical aid to Edgar**.

---

or conclusory statements in the complaint itself."). The amended complaint's allegations are not the true facts.

Officer Brunson activated his body-worn camera. (Ex. 2 at 00:00.) Officer Brunson told Edgar to "come here" twice. (Ex. 2 at 00:03 to 00:09.) Both times, Edgar told Officer Brunson, "No!" (Ex. 2 at 00:04, 00:08.) Officer Brunson told Edgar, "Let them take you to the hospital to make sure you're not sick." (Ex. 2 00:21 to 00:26.) That was Officer Brunson's **third offer of medical aid to Edgar**.

Instead of accepting Officer Brunson's offer to go to the hospital, Edgar walked away from Officer Brunson mumbling incoherently and sat down on the porch steps of a nearby home. (Ex. 2 at 00:26 to 00:35.) A man and a woman were standing on the porch. (Ex. 2 at 00:38.) Officer Brunson told Edgar that he had three options: (1) go to the hospital, (2) go home, or (3) go to jail. (Ex. 2 at 00:37 to 00:51.) That was Officer Brunson's **fourth offer of medical aid to Edgar**.



Edgar sits on the first house's porch steps.
(Ex. 2 at 00:42)

Referring to the man and the woman standing on the porch, Officer Brunson told Edgar, "You're on these people's porch and they don't want you here." (Ex. 2 at 00:51 to 00:55.) Edgar stood and staggered to his left—away from Officer Brunson and away from the ambulance. (Ex.

2 at 00:57 to 01:00.) As he staggered, Edgar began to fall but caught himself against the side of the house. (Ex. 2 at 01:01; Doc. 26 at 7, ¶ 41.) The woman on the porch told Officer Brunson that Edgar "can go his ass to jail." (Ex. 2 at 01:01 to 01:03.)



Edgar catches himself as he falls against the first house.
(Ex. 2 at 01:01)

After he caught himself against the house, Edgar staggered in the direction *opposite* the ambulance, crossing the front yards of two more homes as he moved away from the ambulance. (Ex. 2 at 01:02 to 02:23). Edgar almost fell again as he entered the second home's yard. (Doc. 26 at 7, ¶ 41; Ex. 2 at 01:20.)



Edgar almost falls again.
(Ex. 2 at 01:20)

Edgar walked well-off the public street. (Ex. 2 at 01:02 to 02:23.) In fact, Edgar walked between cars parked close to the fronts of the homes and the homes' front doors, intruding upon the curtilage of each home he passed. (Ex. 2 at 01:02 to 02:23.)



Edgar trespasses in a second house's front yard.
(Ex. 2 at 01:34)



Edgar trespasses in a third house's front yard.
(Ex. 2 at 02:02)

As Edgar staggered out of the third yard, Officer Brunson asked Edgar for his sister's name.

(Ex. 2 at 02:23 to 02:24.) Edgar ignored Officer Brunson. (Ex. 2 at 02:24 to 02:40.) Edgar

staggered across a dirt road, lost his balance, and fell on the ground. (Ex. 2 at 02:23 to 02:40; Doc. 26 at 7, ¶ 47.)



Edgar falls.
(Ex. 2 at 02:40)

When Edgar fell, Officer Brunson radioed for the ambulance to join them. (Ex. 2 at 02:25 to 02:48, 03:05 to 03:10.) Edgar told Officer Brunson, "Man, I'm fixing to have a heart attack." (Ex. 2 at 02:58 to 03:10.) Officer Brunson told Edgar, "You're going to have to go to the hospital, okay?" (Ex. 2 at 03:11 to 03:16.) That was Officer Brunson's **<u>fifth</u> offer of medical aid to Edgar**. When Edgar did not respond, Officer Brunson told Edgar, "You're having a panic attack. Let them do their job and take you to the hospital." (Ex. 2 at 03:20 to 03:26.) That was Officer Brunson's **<u>sixth</u> offer of medical aid to Edgar**. Edgar said, "No." (Ex. 2 at 03:26.)

During this time, Edgar made incoherent statements that demonstrated drug intoxication. Edgar said something about people trying to get him. (Ex. 2 at 03:31 to 03:38.) Officer Brunson repeated, "Let's get you in the ambulance and get you checked out. It's okay." (Ex. 2 at 04:18 to

04:23.) That was Officer Brunson's **seventh offer of medical aid to Edgar**. Again, Edgar said, "No." (Ex. 2 at 04:23 to 04:24.)

Edgar also spoke incoherently about people "dumping" on him, (Ex. 2 at 04:26 to 04:39), and about everybody "hating on" him. (Ex. 2 at 04:50 to 04:51.) When the ambulance pulled up, (Ex. 2 at 05:00), Officer Brunson told Edgar, "You're delirious. Let's get you to the hospital and get you checked out." (Ex. 2 at 05:05 to 05:11.) That was Officer Brunson's **eighth offer of medical aid to Edgar**. Edgar mumbled, "I'm not going to the hospital." (Ex. 2 at 05:10 to 05:12.) Officer Brunson responded, "It's to the point now that you don't have much of a choice." (Ex. 2 at 05:14 to 05:16.) Edgar repeated, "I'm not going to the hospital." (Ex. 2 at 05:16 to 05:18.) Edgar also denied he was having a panic attack. (Ex. 2 at 05:35 to 05:36.)

Officer Brunson repeated that Edgar could go home or go to the hospital, but Edgar could not stay there. (Ex. 2 at 05:47 to 06:24.) That was Officer Brunson's **ninth offer of medical aid to Edgar**. Around that time, Officer Tew arrived. (Ex. 2 at 05:29.)

Edgar said he was going home, which Edgar said was in Kinston.[2] (Ex. 2 at 06:24 to 06:29.) Officer Brunson told Edgar that in his condition, he could not walk to Kinston. (Ex. 2 at 06:29 to 06:34.) Officer Brunson asked Edgar where his sister lived. (Ex. 2 at 06:42 to 06:45.) Edgar answered, "I don't know. Out in the middle." (Ex. 2 at 06:46 to 06:48.) Officer Brunson reminded Edgar that his sister picked him up during another recent encounter. (Ex. 2 at 07:18 to 07:30.) Edgar said, "I ain't calling her." (Ex. 2 at 07:30 to 07:32.) Officer Brunson suggested that Edgar go to his sister's house. (Ex. 2 at 07:44 to 07:49.) Edgar responded, "Ain't nobody there." (Ex. 2 at 07:50 to 07:51.)

---

[2] The Court can take judicial notice that Kinston is 17 miles from Elba. *See United States v. Proch*, 637 F.3d 1262, 1266 n.1 (11th Cir. 2011) (taking judicial notice of map); *see also* www.mapquest.com (last visited 07/04/2023).

For no apparent reason, Edgar accused the Officers and the medics of wanting to hurt him. (Ex. 2 at 08:07 to 08:09.) Officer Brunson assured Edgar that no one would hurt him. (Ex. 2 at 08:09 to 08:10.) Referring to the medics, Officer Brunson told Edgar, "These folks are medical people. They're here to help." (Ex. 2 at 08:13 to 08:17.) That was Officer Brunson's **tenth offer of medical aid to Edgar**. Still, Edgar did not accept medical assistance. (Ex. 2 at 08:17 to 08:46.) Officer Spence arrived around that time. (Ex. 2 at 08:36 to 8:43.)

A medic asked Edgar whether he was going with them or not. (Ex. 2 at 08:44 to 08:45.) Edgar answered, "No!" (Ex. 2 at 08:46.) That was Edgar's **eleventh opportunity to go to the hospital**. Upon hearing Edgar's decision, one of the medics walked away from Edgar to confer with Officer Tew and Officer Spence. (Ex. 2 at 08:52 to 08:59; Doc. 26 at 9, ¶ 62.)



Edgar refuses medical attention in front of an ambulance.
(Ex. 2 at 08:17)

In the meantime, Officer Brunson asked a bystander if he was related to Edgar or if he knew where Edgar's sister lived. (Ex. 2 at 08:52 to 09:09.) The bystander said he was not related to Edgar and did not know where Edgar's sister lived. (Ex. 2 at 08:56 to 9:11.)

Edgar suddenly became belligerent and told Officer Brunson, "I ain't going, man." (Ex. 2 at 10:01 to 10:03.) Edgar threatened that if Officer Brunson placed him in a patrol car, Officer Brunson would be "going to prison for the rest of [his] fucking life." (Ex. 2 at 10:03 to 10:07.) Edgar then threw his blanket over his face and shouted an unintelligible sound. (Ex. 2 at 10:24 to 10:26.)



Edgar throws a blanket over his face and shouts.
(Ex. 2 at 10:25)

### 2.     Edgar started fighting and actively resisted arrest.

When Edgar shouted, Officer Spence ordered Edgar to "stand up." (Ex. 2 at 10:25 to 10:34.) Edgar said, "I'm not going anywhere," and did not budge. (Ex. 2 at 10:34 to 10:36.) Officer Spence grabbed Edgar's right arm, Officer Brunson grabbed Edgar's left arm, and together they lifted Edgar to his feet. (Ex. 2 at 10:36 to 10:41.) Edgar jerked away from Officer Brunson and Officer Spence and fell to the ground. (Ex. 2 at 10:41 to 10:44.)



Edgar jerks away from the Officers.
(Ex. 2 at 10:43)

Edgar quickly regained his footing. (Ex. 2 at 10:44 to 10:46.) Officer Spence tried to restrain Edgar by grabbing him, but Edgar pulled away from Officer Spence again and dropped to his knees. (Ex. 2 at 10:46 to 10:48.) Officer Spence followed Edgar to the ground and wrapped his arms around Edgar. (Ex. 2 at 10:46 to 10:48.) Edgar moved his arms under his body to prevent the Officers from handcuffing him. (Ex. 2 at 10:51 to 10:52.)



Edgar moves his right arm under his body to prevent handcuffing.
(Ex. 2 at 10:51)



Edgar rolls over after the first Taser application, revealing that his left arm is also under his body.
(Ex. 2 at 10:54)

When Edgar moved his arms under his body, Officer Brunson tried to apply a drive stun Taser application to Edgar's right flank. (Ex. 2 at 10:53.) Officer Brunson activated the Taser for two seconds. (Ex. 5 at 1.) The Taser touched Edgar's body for less than a second before Edgar rolled away. (Ex. 2 at 10:53.)

After the first Taser activation, Officer Spence ordered Edgar to put his "hands behind your back!" (Ex. 2 at 10:56 to 10:57.) Officer Brunson also ordered Edgar to "put your hands behind your back!" (Ex. 2 at 10:58 to 11:00.) Edgar continued to resist the Officers by refusing to place his hands behind his back and by trying to regain his footing. (Ex. 2 at 11:00 to 11:08.) Officer Brunson briefly made a second attempt to apply a Taser drive stun, but Edgar again moved away from the Taser. (Ex. 2 at 11:00; Ex. 5 at 1.) During the second attempt, the Taser was activated for one second, (Ex. 5 at 1), and only briefly touched Edgar. (Ex. 2 at 11:00.)

After more struggling, the Officers eventually were able to place one handcuff on Edgar's left wrist. (Ex. 2 at 11:08 to 11:34.) However, Edgar still refused to surrender his right arm for handcuffing. (Ex. 2 at 11:49.) Officer Spence held Officer Brunson's Taser against Edgar's right upper arm and activated the Taser for five seconds. (Ex. 2 at 11:46; Ex. 5 at 1.) Immediately after this third Taser activation (the first by Officer Spence), Officer Spence ordered Edgar to "put your hand behind your back!" (Ex. 2 at 11:46 to 11:49.) Officer Brunson also told Edgar, "Arm behind your back!" (Ex. 2 at 11:49 to 11:50.) Officer Spence and Officer Tew both repeated, "Arm behind your back!" (Ex. 2 at 11:51 to 11:54.)

Referring to the Taser, Officer Tew warned Edgar, "You're fixing to get it again." (Ex. 2 at 11:54 to 11:55.) Officer Tew then told Officer Spence to "hit him again." (Ex. 2 at 11:55.) Officer Spence activated the Taser for another five seconds. (Ex. 2 at 11:55; Ex. 5 at 1.) This was the fourth Taser activation—the second by Officer Spence. Officer Tew then said, "I've got one if

13

that battery goes dead," which indicates the Taser may have failed to discharge. (Ex. 2 at 11:58 to 12:00.)

Officer Tew repeated to Edgar, "Hand behind your back! Quit fighting!" (Ex. 2 at 12:04 to 12:06.) Officer Spence warned Edgar, "Put your hand behind your back, or you're going to get popped again! Do you understand me?" (Ex. 2 at 12:07 to 12:10.) Officer Spence repeated, "Put it back there!" (Ex. 2 at 12:12 to 12:13.) Officer Spence asked Officer Brunson, "Is he fighting, or no?" (Ex. 2 at 12:14 to 12:15.) Officer Brunson answered, "Yeah." (Ex. 2 at 12:16.) Officer Spence then activated the Taser a final time for five seconds. (Ex. 2 at 12:17; Ex. 5 at 1.) After more struggling, the Officers were finally able to apply the second handcuff to Edgar's right wrist. (Ex. 2 at 12:30 to 12:34.) Once the second handcuff was applied, the Officers stopped using force against Edgar. (Ex. 2 at 12:34.)

All told, the video and Taser activity download show five Taser activations that occurred over a period of less than ninety seconds:

| Activation | Duration (Seconds) | Taser Internal Time | Police Video Time | Elapsed Time Since Last Activation | Elapsed Time Since First Activation |
|---|---|---|---|---|---|
| 1 | 2 | 7:43:15 | 10:53 | — | — |
| 2 | 1 | 7:43:22 | 11:00 | 0:07 | 0:07 |
| 3 | 5 | 7:44:08 | 11:46 | 0:46 | 0:53 |
| 4 | 5 | 7:44:17 | 11:55 | 0:09 | 1:02 |
| 5 | 5 | 7:44:39 | 12:17 | 0:22 | 1:24 |

(Ex. 2 at 10:53 to 12:22; Ex. 5 at 1.)

The video also shows that Edgar was actively resisting the Officers during each Taser activation. (Ex. 2 at 10:53 to 12:22.) The video proves nobody used force against Edgar after he was handcuffed. (Ex. 2 at 12:34.) The only injury Edgar sustained during the struggle was a small contusion to the bridge of his nose. (Ex. 1 at 3.) When the struggle ended, Edgar had two medics and an ambulance directly in front him. (Ex. 2 at 12:40.)



Two medics and an ambulance are present during the arrest.
(Ex. 2 at 12:40)

Edgar looked directly at one of the medics and did not request medical attention. (Ex. 2 at

12:57.)



After his arrest Edgar looks directly at a medic and does not ask for medical attention.
(Ex. 2 at 12:57)

After the Officers handcuffed Edgar, Officer Spence and Officer Tew assisted Edgar to his feet and escorted him to Officer Tew's patrol car. (Ex. 2 at 12:55 to 13:26.) Officer Tew transported Edgar to the Elba Police Department, where Officer Tew and Officer Brunson transferred Edgar to Officer Brunson's patrol car for transport to the Coffee County Jail. (Ex. 3 at 00:00 to 02:47.) When Edgar arrived at the jail, the jail nurse met Edgar in the booking area. (Ex. 3 at 24:02; Doc. 26 at 11, ¶ 86; Doc. 26 at 18, ¶ 155.) Officer Brunson briefed the nurse on Edgar's medical condition. (Ex. 3 at 24:02 to 24:25.)

## B.    The exhibits disprove many of the amended complaint's allegations.

The exhibits disprove many of the amended complaint's factual allegations. In each instance, the Court must credit the exhibits over the amended complaint. *See Pourmoghani-Esfahani v. Gee*, 625 F.3d 1313, 1315 (11th Cir. 2010) ("Where the video obviously contradicts Plaintiff's version of the facts, we accept the video's depiction instead of Plaintiff's account."); *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013) ("When an exhibit incontrovertibly contradicts the allegations in the complaint, the exhibit ordinarily controls, even when considering a motion to dismiss."). This section addresses four of the amended complaint's inaccurate factual allegations in particular.

### 1.    Edgar did not tell the Officers that he wanted to go to the hospital.

Paragraph 83 alleges Edgar told the Officers that he "suffered an ankle fracture during the encounter" and "asked for medical treatment." (Doc. 26 at 10, ¶¶ 82-83.) Contradicting paragraph 82, paragraph 139 alleges Edgar suffered "an injury to his foot." (Doc. 26 at 16, ¶ 139.) Regardless of whether Edgar claims to have injured his ankle or his foot, Edgar never told the Officers that he wanted to go to the hospital. (Exs. 2, 3.) Medics were standing directly in front of Edgar when the struggle ended.



Two medics and an ambulance are present during the arrest.
(Ex. 2 at 12:40)

The Officers had already offered Edgar at least eleven opportunities to go to the hospital, so Edgar knew they would allow him to receive treatment if he accepted it. (Ex. 1 at 2-3; Ex. 1 at 3; Ex. 2 at 00:21 to 00:26; Ex. 2 at 00:37 to 00:51; Ex. 2 at 03:11 to 03:16; Ex. 2 at 03:20 to 03:26; Ex. 2 at 04:18 to 04:23; Ex. 2 at 05:05 to 05:11; Ex. 2 at 05:47 to 06:24; Ex. 2 at 08:13 to 08:17; Ex. 2 at 08:44 to 08:46.) Edgar looked directly at a medic and did not request medical attention.



After his arrest Edgar looks directly at a medic and does not ask for medical attention.
(Ex. 2 at 12:57)

The videos prove Edgar did not complain about an injury or ask the medics to check his foot or his ankle. (Ex. 2 12:31 to 13:30; Ex. 3 at 04:12 to 18:16.) To the contrary, after his arrest Edgar bore weight on both feet and both ankles without complaining of injury.

At the arrest scene, Edgar stood on both feet and did not complain. (Ex. 2 at 13:25.)



After his arrest Edgar bears weight on both feet and both ankles and does not complain of injury.
(Ex. 2 at 13:25)

At the police station, Edgar stood on both feet and disobeyed three orders to sit down. (Ex. 3 at 2:49 to 3:08.) Officer Brunson literally had to push Edgar into the car to get him off his feet. (Ex. 3 at 2:56 to 3:08.) It defies common sense to believe someone with a fractured ankle or foot would insist on standing. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its . . . common sense.").



At the police station, Edgar bears his entire body weight on his left foot and ankle and
does not complain.
(Ex. 3 at 2:44)



At the police station, Edgar bears his entire body weight on his right foot and ankle and
does not complain.
(Ex. 3 at 2:48)

Edgar was still walking without a limp when he arrived at the Coffee County Jail. (Ex. 3 at 18:09 to 18:16.)



Edgar walks into the jail without a limp.
(Ex. 3 at 18:11)

Edgar's allegations that he "suffered an ankle fracture during the encounter," (Doc. 26 at 10, ¶ 82), or an "injury to his foot," (Doc. 26 at 16, ¶ 139), are not plausible.

**2.      The Officers had not made up their minds about arresting Edgar before they contacted him.**

Paragraph 78 alleges the Officers "had made up their mind [sic] that they were not going to let Edgar walk away from the situation before even making contact with him." (Doc. 26 at 10, ¶ 78.) That also is not true. The police report and the police videos prove Officer Brunson gave Edgar eleven chances to go to the hospital before the Officers arrested him. (Ex. 1 at 2-3; Ex. 1 at 3; Ex. 2 at 00:21 to 00:26; Ex. 2 at 00:37 to 00:51; Ex. 2 at 03:11 to 03:16; Ex. 2 at 03:20 to 03:26; Ex. 2 at 04:18 to 04:23; Ex. 2 at 05:05 to 05:11; Ex. 2 at 05:47 to 06:24; Ex. 2 at 08:13 to 08:17; Ex. 2 at 08:44 to 08:46.) Officer Brunson also suggested Edgar go to his sister's house, (Ex. 2 at

21

07:44 to 07:49), but Edgar refused to call her. (Ex. 2 at 07:30 to 07:32.) This evidence refutes the amended complaint's speculative and conclusory allegation that the Officers made up their minds that they were not going to let Edgar walk away from the situation before they contacted him. *See Crenshaw v. Lister*, 556 F.3d 1283, 1292 (11th Cir. 2009) ("Because the officers' police reports attached to the complaint refute Crenshaw's conclusory and speculative allegation . . . , we do not credit Crenshaw's allegation."); *McGuire v. Recontrust Co.*, No. 2:11-CV-2787 KJM-CKD, 2013 WL 3863903, at *6 (E.D. Cal. July 24, 2013) (dismissing complaint where plaintiff "ma[de] assertions about defendants' alleged intentions without even attempting to explain the source of his knowledge").

### 3.    Edgar physically resisted arrest.

Paragraph 68 alleges Edgar did not physically resist the Officers. (Doc. 26 at 9, ¶ 68.) That allegation is false. Officer Brunson's video proves Edgar physically resisted arrest for almost two minutes by pulling away from the Officers, by trying to stand up, by holding his arms under his body, and by refusing to place his hands behind his back. (Ex. 2 at 10:41 to 12:33.) Even paragraph 117 of the amended complaint acknowledges that Edgar resisted: "Edgar did not physically resist the officers *until they tackled him and wrestled him to the ground.*" (Doc. 26 at 14, ¶ 117.)

### 4.    The Officers did not beat Edgar.

Paragraphs 115, 120, 134, 135, and 136 allege Edgar was beaten. (Doc. 26 at 14, ¶¶ 115, 120; Doc. 26 at 16, ¶¶ 134-36.) Conclusory allegations of beatings do not satisfy the Rule 8 standard. *See Barr v. Gee*, 437 F. App'x 865, 878 (11th Cir. 2011) ("despite his conclusory assertion that the force was 'excessive,' Barr did not describe the 'beating' or otherwise allege facts permitting a plausible inference that the force they used was unreasonable"); *Hayden v. Broward Cnty.*, No. 12-62278-CIV, 2013 WL 4786486, at *6 (S.D. Fla. Sept. 6, 2013) ("Plaintiff's unelaborated allegation of a 'beating' fails to allege sufficient facts for the Court to be able to

determine that the alleged beating constituted excessive force, as the Complaint provides no allegations that would allow the Court to evaluate the amount of force used and the extent of injury inflicted in relation to the need for force."). Not only does "the conclusory nature of [these] allegations . . . disentitle[ ] them to the presumption of truth," *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009), but the video proves there was no beating. (Ex. 2 at 10:41 to 12:33.)

## C.   Ataxia does not explain Edgar's impaired judgment and erratic behavior.

The amended complaint alleges Edgar suffers from a hereditary condition known as ataxia. (Doc. 26 at 4, ¶ 16; Doc. 26 at 5-6, ¶¶ 28-30.) According to the amended complaint, ataxia "causes difficulty with walking, balance, hand coordination, and speech that looks similar to intoxication." (Doc. 26 at 6, ¶ 30.) The amended complaint alleges Edgar told the officers about his condition. (Doc. 26 at 5, ¶ 28.)

On Officer Brunson's video, Edgar appeared to mumble something about ataxia to Officer Brunson and Officer Tew when they were trying to coax Edgar out of Officer Tew's patrol car after Edgar was already under arrest. (Ex. 3 at 01:18 to 01:26.) Officer Tew told Edgar that he could not understand him, and Edgar did not clarify his statement for Officer Tew. (Ex. 3 at 01:24 to 01:26.)

Officer Brunson had interacted with Edgar six days earlier. (Ex. 4 at 00:00 to 03:03; Ex. 2 at 07:18 to 07:32; Ex. 3 at 06:39 to 06:53.) The Defendants have attached the video from Officer Brunson's June 16, 2022 encounter with Edgar as Exhibit 4. (Brunson Decl. at 2, ¶ 5.) From that encounter, Officer Brunson knew Edgar's neurological disorder made him unsteady. (Ex. 4 at 00:21 to 0031; Ex. 3 at 17:55 to 17:59.) But the prior encounter also gave Officer Brunson a baseline to compare Edgar's demeanor when he was sober to Edgar's demeanor on the day of his arrest. (Ex. 4 at 00:00 to 03:03.) On the prior occasion, Edgar "could not have been nicer." (Ex. 3 at 21:59 to 22:01.) Edgar was lucid, agreeable, and cooperative, and his speech was easily

comprehensible. (Ex. 4 at 00:00 to 03:03; Ex. 3 at 06:55 to 07:14.) On the day of his arrest, however, it was like "Dr Jekyll and Mr. Hyde." (Ex. 3 at 22:07 to 22:12.) Edgar was "like a completely different person." (Ex. 3 at 07:24 to 07:27.) Edgar was incoherent, (Ex. 2 at 03:31 to 03:38; Ex. 2 at 04:26 to 04:39; 04:50 to 04:51; Ex. 2 at 06:46 to 06:48; Ex. 2 at 08:07 to 08:09), and "sweating profusely," (Ex. 3 at 07:33 to 07:35), and his behavior was consistent with someone using "meth or spice." (Ex. 3 at 07:37 to 07:44; *see also* Doc. 26 at 13, ¶ 105.) Even the amended complaint admits Edgar's symptoms "look[ed] similar to intoxication." (Doc. 26 at 6, ¶ 30.)

The amended complaint's description of Edgar's ataxia condition is most notable for the symptom that the amended complaint does *not* attribute to ataxia. The amended complaint does not allege that ataxia caused Edgar's *impaired judgment*. (Doc. 26 at 5-6, ¶¶ 28-30.) Ataxia does not explain why Edgar was wandering in the middle of a road and across private yards wrapped in a blanket during the month of June while unable to form cogent sentences and while refusing to cooperate with the medics and police officers who were trying to help him. And the amended complaint does not allege that a person afflicted with ataxia cannot get just as high on drugs as someone who does not have ataxia.

### D.   Edgar's Claims

The amended complaint contains seven counts:

1.   Count One asserts a § 1983 claim alleging an equal protection violation against the Officers under the United States Constitution's Fourteenth Amendment, (Doc. 26 at 13-14, ¶¶ 108-23);

2.   Count Two asserts a § 1983 claim for false arrest against the Officers under the United States Constitution's Fourth Amendment, (Doc. 26 at 14-15, ¶¶ 124-32);

3.   Count Three asserts a state law claim for assault-and-battery against the Officers, (Doc. 26 at 15-16, ¶¶ 133-37);

24

4. Count Four asserts a § 1983 claim for deprivation of medical care against the Officers and three fictitious parties, presumably under the United States Constitution's Fourteenth Amendment, (Doc. 26 at 16-17, ¶¶ 138-49);

5. Count Five asserts a § 1983 claim for negligent correctional care against two fictitious parties, (Doc. 26 at 17-19, ¶¶ 150-62);

6. Count Six asserts a state law claim for medical negligence against two fictitious parties, (Doc. 26 at 19-21, ¶¶ 163-71); and

7. Count Seven asserts a state law claim for wantonness against Officer Brunson and five fictitious parties, (Doc. 26 at 21-22, ¶¶ 172-75).

The amended complaint does not assert an excessive force claim under the Fourth Amendment. (Doc. 26.) The amended complaint also does not assert a claim against the City. (Doc. 26.)

Edgar sues the Officers in their individual capacities only. (Doc. 26 at 2-3, ¶¶ 5-7.) Edgar seeks compensatory damages, punitive damages, court costs, interest, and attorney's fees. (Doc. 26 at 22-23, ¶¶ (A)-(D).)

## III.    Analysis

The Defendants ask the Court to dismiss this action in its entirety for the following reasons: (1) the amended complaint's fictitious party claims are procedurally improper; (2) the amended complaint does not state a claim against any of the Defendants upon which relief can be granted; (3) the Officers are entitled to qualified immunity; (4) the Defendants are entitled to peace officer immunity under Alabama Code § 6-5-338; (5) the City is entitled to municipal immunity under Alabama Code § 11-47-190; and (6) the City is also entitled to municipal immunity against punitive damages under state and federal law.

## A.    The Failure-to-State-a-Claim Standard

Federal Rule of Civil Procedure 12(b)(6) authorizes a party to assert by motion the defense of "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). According

to Rule 8, "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "To decide whether a complaint survives a motion to dismiss, we use a two-step framework." *McCullough v. Finley*, 907 F.3d 1324, 1333 (11th Cir. 2018). "A district court considering a motion to dismiss shall begin by identifying conclusory allegations that are not entitled to an assumption of truth—legal conclusions must be supported by factual allegations." *Randall v. Scott*, 610 F.3d 701, 709-10 (11th Cir. 2010). "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Edgar "bear[s] the burden of setting forth facts that entitle [him] to relief." *Worthy v. City of Phenix City*, 930 F.3d 1206, 1222 (11th Cir. 2019).

## B.   The Exhibits

The Defendants have attached the police report, three police body-worn camera videos, and the Taser activity download to this motion to dismiss. (Brunson Decl. at 1-2, ¶¶ 2-5; Exs. 1, 2, 3, 4, 5.) This section explains why the Court must credit those exhibits over the amended complaint's allegations.

### 1.   The Court may consider the police report because the amended complaint incorporates the police report by reference.

The Court may consider the police report (Exhibit 1) without converting this motion to dismiss into a summary judgment motion because the amended complaint incorporates the police report by reference. *See Saunders v. Duke*, 766 F.3d 1262, 1270 (11th Cir. 2014) ("documents . . . incorporated in the complaint by reference can generally be considered by a federal court in ruling on a motion to dismiss under Rule 12(b)(6)"). Under the doctrine of incorporation by reference,

[the Court] may . . . consider documents attached to the motion to dismiss if they are referred to in the complaint, central to the plaintiff's claim, and of undisputed authenticity." *Hi-Tech Pharm., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1189 (11th Cir. 2018). The amended complaint incorporates the police report by reference in paragraphs 79 and 84. (Doc. 26 at 10-11, ¶¶ 79, 84.) Even when an amended complaint incorporates only part of an exhibit, the court may consider the "full contents" of the exhibit. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 568 n.13 (2007). To the extent of a conflict between the allegations of the amended complaint and the contents of the police report, the police report controls. *See Crenshaw v. Lister*, 556 F.3d 1283, 1292 (11th Cir. 2009) (crediting police reports incorporated by reference in complaint over complaint's factual allegations).

     **2.**     **The Court may consider the body-worn camera videos because they are central to Edgar's claims and they are public records of which the Court may take judicial notice.**

The Court may also consider the police body-worn camera videos (Exhibits 2, 3, and 4) without converting this motion to dismiss into a summary judgment motion. Edgar incorporated the video evidence by reference in the amended complaint, (Doc. 26 at 6, ¶ 33), and that evidence is central to Edgar's claims. *See, e.g., Robinson v. City of Huntsville*, No. 21-13979, 2022 WL 3867584, at *3 (11th Cir. Aug. 30, 2022) (holding district court properly considered police video attached to motion to dismiss); *McDowell v. Gonzalez*, 820 F. App'x 989, 992 (11th Cir. 2020) (same); *Quinette v. Reed*, 805 F. App'x 696, 700 (11th Cir. 2020) (same), *cert. denied*, 141 S. Ct. 2700 (2021); *Cantrell v. McClure*, 805 F. App'x 817, 819 n.2 (11th Cir. 2020) (same).

The Court may also consider the videos under the judicial notice doctrine:

> Although courts do not normally consider traffic stop videos at the motion to dismiss stage of the proceedings, the Court concludes it is permitted to take judicial notice of this video as a public record under Federal Rule of Evidence 201. *Universal Express, Inc. v. U.S. S.E.C.*, 177 Fed. Appx. 52, 53 (11th Cir. 2006); and

see generally Brewer v. Pensacola Police Dep't, No. 3:15CV469/MCR/CJK, 2015
WL 8113253, at *4 (N.D. Fla. Nov. 13, 2015) (noting that an arrest video is
available through Florida's Public Records Act). Regardless, all parties refer to the
video in their filings, and it is referenced in the Complaint. (Doc. 1, ¶ 36).

Homonai v. City of Fruitland Park, No. 5:16-CV-610-OC-30PRL, 2017 WL 1495806, at *1 (M.D.

Fla. Apr. 26, 2017); see also McGee v. City of Cincinnati Police Dep't, No. 1:06-CV-726, 2007

WL 1169374, at *1 (S.D. Ohio Apr. 18, 2007) (in § 1983 police misconduct case, holding

"Defendants correctly contend that the videotape and other records submitted with its motion to

dismiss are public records and that the Court may consider such exhibits without converting the

motion to dismiss into a motion for summary judgment.").

The Court must credit the videos over the amended complaint's allegations. See Baker v.

City of Madison, 67 F.4th 1268, 1277-78 (11th Cir. 2023) ("where a video is clear and obviously

contradicts the plaintiff's alleged facts, we accept the video's depiction instead of the complaint's

account and view the facts in the light depicted by the video") (citation omitted).

**3.      The Court may consider the Taser activity download because the amended
         complaint incorporates the Taser activity by reference and the download is a
         public record of which the Court may take judicial notice.**

Finally, the Court may consider the Taser activity download because the amended

complaint incorporates the Taser activity by reference and, separately, the download is a public

record of which the Court may take judicial notice. See Tellabs, Inc. v. Makor Issues & Rights,

Ltd., 551 U.S. 308, 322 (2007) (holding that on motion to dismiss, courts may consider "documents

incorporated into the complaint by reference, and matters of which a court may take judicial

notice"). The amended complaint incorporates the Taser activity by reference by referring to the

Taser activity throughout. (Doc. 26 at 9-16, ¶¶ 66, 67, 69, 76, 115, 120, 134, 136, 139.) The Taser

activity download is also a record of the Elba Police Department. (Ex. 5.) The Court may take

judicial notice of public records. See Halmos v. Bomardier Aerospace Corp., 404 F. App'x 376,

377 (11th Cir. 2010) ("We have held that a district court may take judicial notice of matters of public record without converting a Rule 12(b)(6) motion into a Rule 56 motion."). The Court must credit the Taser activity download over the amended complaint's allegations. *See F.T.C. v. AbbVie Products LLC*, 713 F.3d 54, 63 (11th Cir. 2013) ("We . . . treat specific facts demonstrated by exhibits as overriding more generalized or conclusory statements in the complaint itself.").

**C.    The Court should dismiss all fictitious party claims because the amended complaint's description of the fictitious parties is not sufficiently clear to allow service of process.**

The Defendants move to dismiss all fictitious party claims because the amended complaint's description of the fictitious parties is not sufficiently clear to allow service of process. "As a general matter, fictitious-party pleading is not permitted in federal court." *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010). Fictitious party pleading is not allowed unless "the plaintiff's description of the defendant is 'sufficiently clear to allow service of process.'" *Vielma v. Gruler*, 808 F. App'x 872, 880 (11th Cir. 2020) (quoting *Dean v. Barber*, 951 F.2d 1210, 1215-16 & n.6 (11th Cir. 1992)). "[The Eleventh Circuit] has allowed plaintiffs to sue real parties under fictitious names only when use of a 'John Doe' label is, 'at the very worst, surplusage' because the plaintiff's description of the defendant is 'sufficiently clear to allow service of process.'" *Vielma*, 808 F. App'x at 880 (quoting *Dean*, 951 F.2d at 1215-16 & n.6). Edgar's amended complaint does not identify the fictitious parties with sufficient clarity to allow service of process. (Doc. 26 at 3, ¶¶ 8-9.) "[The Eleventh Circuit] has never permitted John Doe pleading solely on the ground that discovery might reveal an unnamed defendant's identity." *Vielma*, 808 F. App'x at 880. "Instead, [the Eleventh Circuit] has always required an unambiguous description of a defendant that enables service of process." *Id.*

In Edgar's response to the Defendants' motion to dismiss the original complaint, Edgar conceded his fictitious party claims were not viable. (Doc. 21 at 9, § B, ¶ 1.) To stave off dismissal,

Edgar represented that "now having possession of the video, plaintiff can identify at least one of the nurses to whom the complaint refers. As such, this deficiency can be cured with leave to amend." (Doc. 21 at 9, § B, ¶ 1.) Based in part on this representation, the Court granted Edgar leave to amend. (Doc. 25 at 1, ¶ 1.) Edgar then filed an amended complaint that contains exactly the same fictitious party pleading defect and that does not, as promised, identify the nurse. Because Edgar's amended complaint does not identify the fictitious parties with sufficient clarity to enable service of process, the Court should dismiss all fictitious party claims.

**D.    The Federal Claims**

First, this section explains why the Officers may invoke qualified immunity. Next, this section addresses each of Edgar's § 1983 claims in a more logical order than they appear in the amended complaint.

**1.    The Officers may invoke qualified immunity because they acted within their discretionary authority.**

The Officers invoke the qualified immunity defense against all § 1983 claims. "Qualified immunity protects government officials performing discretionary functions from civil trials (and the other burdens of litigation, including discovery) and from liability if their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known." *Foy v. Holston*, 94 F.3d 1528, 1532 (11th Cir. 1996). "In order to assert a qualified immunity defense, a government official must first establish that he was acting within his discretionary authority at the time of the challenged conduct." *Khoury v. Miami-Dade Cnty. Sch. Bd.*, 4 F.4th 1118, 1125 (11th Cir. 2021). The amended complaint alleges Officers Brunson, Spence, and Tew were "officer[s] with the Elba Police Department and [were] acting under the color of law." (Doc. 26 at 2-3, ¶¶ 5-7.) The amended complaint also alleges the Officers arrested Edgar. (Doc. 26 at 10, ¶ 81.) These allegations satisfy qualified immunity's discretionary authority

requirement. *See McDowell v. Gonzalez*, 820 F. App'x 989, 991 (11th Cir. 2020) ("A police officer generally acts within the scope of his discretionary authority when making an arrest.").

"After a government official establishes that he was acting within the scope of his discretionary authority, the burden shifts to the plaintiff to show that the official's conduct (1) violated federal law (2) that was clearly established at the relevant time." *Spencer v. Benison*, 5 F.4th 1222, 1230 (11th Cir. 2021). "These two components may be analyzed in any order." *Manners v. Cannella*, 891 F.3d 959, 968 (11th Cir. 2018). "[E]ach defendant is entitled to an independent qualified-immunity analysis as it relates to his or her actions and omissions. So we must be careful to evaluate a given defendant's qualified-immunity claim, considering only the actions and omissions in which that particular defendant engaged." *Alcocer v. Mills*, 906 F.3d 944, 951 (11th Cir. 2018).

### 2. Count Two does not state a Fourth Amendment false arrest claim and the Officers are entitled to qualified immunity.

Count Two asserts a Fourth Amendment false arrest claim against the Officers. (Doc. 26 at 14-15, ¶¶ 124-32.) "To succeed on a false arrest claim, a plaintiff must establish (1) a lack of probable cause and (2) an arrest." *Richmond v. Badia*, 47 F.4th 1172, 1180 (11th Cir. 2022). "Probable cause is not a high bar." *Paez v. Mulvey*, 915 F.3d 1276, 1286 (11th Cir. 2019) (citation and internal punctuation omitted). Probable cause exists when "'a reasonable officer could conclude . . . that there [is] a substantial chance of criminal activity.'" *Washington v. Howard*, 25 F.4th 891, 902 (11th Cir. 2022) (quoting *D.C. v. Wesby*, 138 S. Ct. 577, 588 (2018)). "Because probable cause is an objective standard, an arrest is lawful if the officer had probable cause to arrest for any offense, not just the offense cited at the time of arrest or booking." *D.C. v. Wesby*, 138 S. Ct. 577, 584 n.2 (2018). "Where there is at least minimal communication between different

officers, the collective knowledge of the officers determines probable cause." *United States v. Allison*, 953 F.2d 1346, 1350 (11th Cir. 1992). The collective knowledge doctrine applies here.

It is important to remember that the Officers do *not* have the burden to establish probable cause like the government has in a criminal case. In a civil action, *the plaintiff* has the burden to demonstrate the lack of probable cause. *See Gill ex rel. K.C.R. v. Judd*, 941 F.3d 504, 522-23 (11th Cir. 2019) ("That burden is on the plaintiff even where the government would . . . bear it in [a] criminal case."); *Cuesta v. Sch. Bd. of Miami-Dade Cnty.*, 285 F.3d 962, 970 (11th Cir. 2002) ("in a § 1983 action, the plaintiff bears the burden of persuasion on every element"). The amended complaint does not satisfy Edgar's burden to plausibly demonstrate that probable cause for his arrest did not exist. *See Turner v. Williams*, 65 F.4th 564, 582 (11th Cir. 2023) ("the Complaint must allege a lack of probable cause"). To the contrary, the Officers had probable cause to arrest Edgar for at least eight crimes: (1) pedestrian on a roadway, (2) failure to obey a police officer, (3) public intoxication, (4) pedestrian under the influence, (5) criminal trespass in the third degree, (6) disorderly conduct—unreasonable noise, (7) disorderly conduct—fighting or tumultuous behavior, and (8) resisting arrest.

> **a)    Edgar did not plausibly demonstrate that the Officers lacked probable cause to arrest him for being a pedestrian on a roadway.**

The Officers had probable cause to arrest Edgar for being a pedestrian on a roadway. Alabama Code § 32-5A-215(b) states, "Where a sidewalk is not available, any pedestrian walking along and upon a highway *shall walk only on a shoulder, as far as practicable from the edge of the roadway*." (Emphasis added). The Alabama Code defines a "highway" as "[t]he entire width between the boundary lines of *every way publicly maintained* when any part thereof is open to the use of the public for purposes of vehicular travel." Ala. Code § 32-1-1.1(25) (emphasis added).

As Officer Brunson's video shows, Cedar Lane Drive had ample space on the shoulder for a pedestrian to walk. (Ex. 2 at 00:04.)



Cedar Lane Drive has a wide shoulder where a pedestrian can walk.
(Ex. 2 at 00:04)

Despite Cedar Lane Drive's wide shoulder, the amended complaint alleges Officer Brunson "found Edgar in the street" when he arrived. (Doc. 26 at 5, ¶ 22.) Officer Brunson's report confirms Edgar was "staggering in the middle of the road" when Officer Brunson arrived. (Ex. 1 at 2.) Officer Brunson's video shows Edgar walking out of the road when the recording began. (Ex. 2 at 00:00.)



Edgar is walking out of the road when Officer Brunson's video begins.
(Ex. 2 at 00:00)

Count Two's Fourth Amendment false arrest claim fails because Edgar cannot plausibly demonstrate that the Officers lacked probable cause to arrest him for being a pedestrian on the roadway.

> **b)**     **Edgar did not plausibly demonstrate that the Officers lacked probable cause to arrest him for failure to obey a police officer.**

The Officers had probable cause to arrest Edgar for failure to obey a police officer. Alabama Code § 32-5A-4 states, "No person shall willfully fail or refuse to comply with any lawful order or direction of any police officer or fireman invested by law with authority to direct, control or regulate traffic." Because Officer Brunson "found Edgar in the street," (Doc. 26 at 5, ¶ 22), Edgar posed a threat to interfere with vehicular traffic. Officer Brunson twice ordered Edgar to "come here." (Doc. 2 at 00:03 to 00:09.) Both times, Edgar told Officer Brunson, "No!" and walked away from him. (Doc. 2 at 00:04, 00:08.) Although Edgar eventually sat on a nearby porch

as Officer Brunson instructed, Edgar initially disobeyed Officer Brunson's lawful orders to "come here." (Ex. 2 at 00:03 to 00:09.)

Edgar separately disobeyed another lawful order later in the encounter when Officer Spence ordered him to "stand up." (Ex. 2 at 10:25 to 10:34.) Edgar responded, "I'm not going nowhere," and did not stand. (Ex. 2 at 10:34 to 10:36.) Edgar's failure to obey Officer Spence's lawful order also gave the Officers probable cause to arrest. Count Two's Fourth Amendment false arrest claim fails because Edgar cannot plausibly demonstrate that the Officers lacked probable cause to arrest him for failure to obey.

### c)   Edgar did not plausibly demonstrate that the Officers lacked probable cause to arrest him for public intoxication.

The Officers had probable cause to arrest Edgar for public intoxication. "A person commits the crime of public intoxication if he appears in a public place under the influence of alcohol, narcotics or other drug to the degree that he endangers himself or another person or property, or by boisterous and offensive conduct annoys another person in his vicinity." Ala. Code § 13A-11-10. "Intoxication of a person at the time in issue may be shown by a combination of circumstances even though no one of the circumstances considered alone would be sufficient to prove such intoxication." Charles W. Gamble, *McElroy's Alabama Evidence*, § 60.03(6), at 267 (5th ed. 1996). The Officers were not required to have "evidence that [Edgar] failed a chemical test or field sobriety test[.] . . . [T]heir observations . . . [were] sufficient." *Cagle v. State*, 457 So. 2d 463, 465 (Ala. Crim. App. 1984). "Even a lay witness may testify that, in his opinion, a person was intoxicated." *Id.*

Officer Brunson recognized that Edgar was intoxicated because he had interacted with a sober Edgar six days earlier. (Ex. 4 at 00:00 to 03:03; Ex. 3 at 06:39 to 07:44.) During the prior encounter, Edgar was polite, his speech was clear, and he responded promptly and directly to

Officer Brunson's questions. (Ex. 4 at 00:09 to 02:17.) The amended complaint alleges Edgar was able to "clearly explain[ ]" himself during the prior encounter. (Doc. 26 at 4, ¶ 16.) On the day of his arrest, however, Edgar became combative and climbed off the ambulance stretcher. (Ex. 1 at 3.) Edgar staggered across a roadway and fell to the ground. (Ex. 2 at 02:23 to 02:40; Doc. 26 at 7, ¶ 47.) Edgar not only exhibited unsteadiness on his feet and slurred speech, but he also sweated profusely, spoke incoherently, and made irrational decisions. (Ex. 1 at 00:00 to 10:31; Ex. 3 at 07:33 to 07:35.) Edgar made a series of incoherent statements that evidenced his intoxication. (Ex. 2 at 03:31 to 03:38; Ex. 2 at 04:26 to 04:39; 04:50 to 04:51; Ex. 2 at 06:46 to 06:48; Ex. 2 at 08:07 to 08:09.) Among other things, Edgar said people were trying to get him, (Ex. 2 at 03:31 to 03:38), and accused the Officers and medics of wanting to hurt him. (Ex. 2 at 08:07 to 08:09.) Collectively, these observations were enough to establish probable cause (*i.e.*, a "substantial chance") that Edgar was intoxicated by drugs. *See Cagle*, 457 So. 2d at 465 ("the conclusions of the trained police officers, based on their observation of the defendant's dilated pupils, slurred speech, and staggering gait, were sufficient evidence of Cagle's intoxication"). Officer Brunson formed the opinion that Edgar was under the influence of "meth or spice." (Ex. 3 at 07:37 to 07:44.) Even the amended complaint stipulates that Edgar's condition resembled intoxication, (Doc. 26 at 6, ¶ 30), and concedes that at least one of the officers believed Edgar was intoxicated. (Doc. 26 at 13, ¶ 105.) Edgar has not offered any reason for the Officers to believe someone with ataxia cannot also be high on drugs.

The Officers also had probable cause to believe Edgar satisfied the "annoyance" element of public intoxication. Edgar annoyed people in the neighborhood to the extent that they called the police on him. (Doc. 26 at 5, ¶ 21; Ex. 1 at 2.) The woman whose porch Edgar sat on told Officer Brunson that Edgar "can go his ass to jail." (Ex. 2 at 01:01 to 01:03.)

More importantly, however, the Officers had probable cause to believe Edgar posed a danger to himself. Edgar was unable to walk without falling, (Ex. 2 at 01:01; Ex. 2 at 01:20; Ex. 2 at 02:23 to 02:40), and in his intoxicated condition, Edgar's ataxia only heightened his peril. (Doc. 26 at 5-6, ¶¶ 28-30.) At the very least, Edgar was at serious risk of injury by falling or by staggering into the road and being struck by a passing vehicle during the seventeen-mile walk to Kinston. (Ex. 2 at 06:24 to 06:29.)



Edgar catches himself as he falls against the first house.
(Ex. 2 at 01:01)



Edgar almost falls again.
(Ex. 2 at 01:20)



Edgar falls all the way to the ground.
(Ex. 2 at 02:40)

"A policeman's lot is not so unhappy that he must choose between being charged with

dereliction of duty if he does not arrest when he has probable cause, and being mulcted in damages

if he does." *Pierson v. Ray*, 386 U.S. 547, 555 (1967). Count Two's Fourth Amendment false arrest claim fails because Edgar did not plausibly demonstrate that the Officers lacked probable cause to arrest him for public intoxication.

> **d)**   **Edgar did not plausibly demonstrate that the Officers lacked probable cause to arrest him for being a pedestrian under the influence.**

The Officers had probable cause to arrest Edgar for being a pedestrian under the influence. Alabama Code § 32-5A-221 states, "A pedestrian who is under the influence of alcohol or any drug to a degree which renders himself or herself a hazard shall not walk or be upon a highway." Again, the amended complaint alleges Officer Brunson "found Edgar in the street." (Doc. 26 at 5, ¶ 22.) For the same reasons that the Officers had probable cause to believe Edgar committed the crime of public intoxication, the Officers also had probable cause to believe Edgar was a pedestrian under the influence. Count Two's Fourth Amendment false arrest claim fails because Edgar cannot plausibly demonstrate that the Officers lacked probable cause to arrest him for being a pedestrian under the influence.

> **e)**   **Edgar did not plausibly demonstrate that the Officers lacked probable cause to arrest him for criminal trespass in the third degree.**

The Officers had probable cause to arrest Edgar for criminal trespass in the third degree. "A person is guilty of criminal trespass in the third degree when he knowingly enters or remains unlawfully in or upon premises." Ala. Code § 13A-7-4(b). "A person 'enters or remains unlawfully' in or upon premises when he is not licensed, invited or privileged to do so." Ala. Code § 13A-7-1(3). "Premises . . . includes . . . any real property." Ala. Code § 13A-7-1(5). Edgar intruded upon the premises of three homes in Officer Brunson's presence without first receiving an invitation from the owners or occupants of those premises. (Ex. 2 at 00:34 to 02:20.) One of the residents told Officer Brunson that Edgar "can go his ass to jail." (Ex. 2 at 01:01 to 01:03.)



Edgar trespasses on the first house's porch steps.
(Ex. 2 at 00:42)



Edgar trespasses in the second house's front yard.
(Ex. 2 at 01:34)



Edgar trespasses in the third house's front yard.
(Ex. 2 at 02:02)

The Officers did not need evidence that Edgar had been warned to stay off the premises before they could believe Edgar was trespassing. *See Chambers v. City of Opelika*, 698 So. 2d 792, 795 (Ala. Crim. App. 1996) ("[W]hen . . . premises are private and not open to the public, there is no requirement that the prosecution prove that a prior written or verbal warning was given to the intruder."). Count Two's Fourth Amendment false arrest claim fails because Edgar cannot plausibly demonstrate that the Officers lacked probable cause to arrest him for criminal trespass in the third degree.

> **f)      Edgar did not plausibly demonstrate that the Officers lacked probable cause to arrest him for disorderly conduct— unreasonable noise.**

The Officers had probable cause to arrest Edgar for the unreasonable noise variety of disorderly conduct. "A person commits the crime of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he or she . . . [m]akes unreasonable noise." Ala. Code § 13A-11-7(a)(2). The Officers arrested Edgar after he

suddenly threw his blanket over his face and shouted. (Ex. 2 at 10:24 to 10:40.) Edgar had also

been "shouting incoherently" earlier after he got off the stretcher. (Ex. 1 at 3.)



Edgar throws the blanket over his face and shouts.
(Ex. 2 at 10:25)

Edgar's shouting constituted unreasonable noise. (Ex. 10:24 to 10:26.) Considering that

Edgar was also roaming the streets and yards of an Elba neighborhood seventeen miles from his

home, prompting local residents to call the police and one woman to encourage Officer Brunson

to take him to jail, the Officers reasonably believed Edgar was either intentionally or recklessly

causing public inconvenience, annoyance, and alarm. (Ex. 2 at 00:34 to 02:20; Ex. 2 at 06:24 to

06:29; Compl. at 1 at 5, ¶ 21.) Count Two's Fourth Amendment false arrest claim fails because

Edgar cannot plausibly demonstrate that the Officers lacked probable cause to arrest him for the

unreasonable noise variety of disorderly conduct.

> **g)** **Edgar did not plausibly demonstrate that the Officers lacked probable cause to arrest him for disorderly conduct—fighting or tumultuous behavior.**

The Officers also had probable cause to arrest Edgar for the fighting-or-tumultuous-behavior variety of disorderly conduct. "A person [also] commits the crime of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he or she . . . [e]ngages in fighting or in violent tumultuous or threatening behavior." Ala. Code § 13A-11-7(a)(1). The Officers were entitled to arrest Edgar for disorderly conduct once he started fighting them. When the Officers lifted Edgar to his feet, he fought with them for almost two minutes until they were able to subdue him and apply handcuffs. (Ex. 2 at 10:41 to 12:33.) Edgar pulled away from the Officers, tried to stand up, held his arms under his body, and refused to place his hands behind his back. (Ex. 2 at 10:41 to 12:33.)

Even if Edgar could legitimately claim that he was only resisting an unlawful arrest—and he can't—the Officers could still arrest him for disorderly conduct once he started fighting them. *See United States v. Bailey*, 691 F.2d 1009, 1016-17 (11th Cir. 1982) ("notwithstanding a strong causal connection in fact between lawless police conduct and a defendant's response, if the defendant's response is itself a new, distinct crime, then the police constitutionally may arrest the defendant for that crime"); *Morris v. Town of Lexington*, 748 F.3d 1316, 1325 (11th Cir. 2014) ("Although Alabama law permits a citizen to use reasonable force in defense of self or property, Ala. Code §§ 13A-3-23, -25, this is an affirmative defense, *id.* § 13A-3-21. Morris could plead the use of such force as a defense to a charge of assault; in fact, he prevailed when he was tried on that charge. But the fact remains that once Morris punched Bradford, the officers had probable cause, or at the very least arguable probable cause, to believe that Morris had committed assault. Therefore, the officers' arrest of Morris after he punched Bradford cannot be considered a violation of Morris's Fourth Amendment right not to be seized without probable cause."). Count Two's

Fourth Amendment false arrest claim fails because Edgar cannot plausibly demonstrate that the Officers lacked probable cause to arrest him for the fighting-or-tumultuous-behavior variety of disorderly conduct.

> **h)      Edgar did not plausibly demonstrate that the Officers lacked probable cause to arrest him for resisting arrest.**

Finally, the Officers had probable cause to arrest Edgar for resisting arrest. "A person commits the crime of resisting arrest if he intentionally . . . attempts to prevent a peace officer from affecting a lawful arrest of himself . . . ." Ala. Code § 13A-10-41. Edgar physically resisted arrest for almost two minutes by pulling away from the Officers, by trying to stand up, by holding his arms under his body, and by refusing to place his hands behind his back. (Ex. 2 at 10:41 to 12:33.) Count Two's Fourth Amendment false arrest claim fails because Edgar cannot plausibly demonstrate that the Officers lacked probable cause to arrest him for resisting arrest.

> **i)      The Officers are entitled to qualified immunity because Edgar did not plausibly demonstrate that his arrest violated a clearly established Fourth Amendment right.**

Because the Officers had actual probable cause to arrest Edgar for at least one crime, Edgar's arrest did not violate the Fourth Amendment. *See D.C. v. Wesby*, 138 S. Ct. 577, 584 n.2 (2018) ("Because probable cause is an objective standard, an arrest is lawful if the officer had probable cause to arrest for any offense, not just the offense cited at the time of arrest or booking."). Because the Officers did not violate Edgar's Fourth Amendment right against false arrest, the Court need not reach the "clearly established law" step of the qualified immunity test. *See Holmes v. Kucynda*, 321 F.3d 1069, 1077 (11th Cir. 2003) ("If no constitutional violation is established, then the defendants prevail, and 'there is no necessity for further inquiries concerning qualified immunity.'") (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). In any event, the Officers are also entitled to qualified immunity because Edgar cannot plausibly demonstrate that his arrest

violated clearly established law. *See Foy v. Holston*, 94 F.3d 1528, 1532 (11th Cir. 1996) ("Once the qualified immunity defense is raised, plaintiffs bear the burden of showing that the federal rights allegedly violated were clearly established.").

"Even if an officer has effected an arrest without probable cause (and without a warrant), he still will be entitled to qualified immunity if the arrest was supported by *arguable* probable cause." *Fish v. Brown*, 838 F.3d 1153, 1167 (11th Cir. 2016). The Officers are entitled to qualified immunity against Edgar's Fourth Amendment false arrest claim because they had arguable probable to arrest Edgar for at least one crime. *See Brown v. City of Huntsville*, 608 F.3d 724, 735 (11th Cir. 2010) ("If the arresting officer had arguable probable cause to arrest for any offense, qualified immunity will apply.").

To defeat the qualified immunity defense, Edgar must demonstrate that "it was already clearly established, as a matter of law, that at the time of [his] arrest, an objective officer could not have concluded reasonably that probable cause existed to arrest [him] <u>under the particular circumstances [the Officers] confronted</u>." *Gates v. Khokhar*, 884 F.3d 1290, 1303 (11th Cir. 2018). In other words, Edgar must identify "already existing law that clearly established—beyond debate—the unlawfulness of an arrest *under the circumstances present here*." *Id.* (emphasis added). "The 'clearly established' standard . . . requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him. The rule's contours must be so well defined that it is 'clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *D.C. v. Wesby*, 138 S. Ct. 577, 590 (2018) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). The Supreme Court has "stressed the need to 'identify a case where an officer acting under similar circumstances . . . was held to have violated the Fourth Amendment.'" *D.C. v. Wesby*, 138 S. Ct. 577, 590 (2018) (quoting *White v. Pauly*, 137 S. Ct. 548, 552 (2017)). That case must

45

address the specific Alabama offense in question. *See Henley v. Millsap*, No. 21-12231, 2022 WL 3654846, at *3 (11th Cir. Aug. 25, 2022) (holding officer entitled to qualified immunity when plaintiff's cases did not address specific offense in question).

Edgar cannot satisfy his burden to identify controlling precedent which holds that, under these specific circumstances, probable cause did not exist for each of the crimes cited above: (1) pedestrian on a roadway, (2) failure to obey a police officer, (3) public intoxication, (4) pedestrian under the influence, (5) criminal trespass in the third degree, (6) disorderly conduct—unreasonable noise, (7) disorderly conduct—fighting or tumultuous behavior, and (8) resisting arrest. *Foy v. Holston*, 94 F.3d 1528, 1532 (11th Cir. 1996) ("Once the qualified immunity defense is raised, plaintiffs bear the burden of showing that the federal rights allegedly violated were clearly established."). To defeat qualified immunity, Edgar must identify controlling precedent from the United States Supreme Court, the United States Court of Appeals for the Eleventh Circuit, or the Alabama Supreme Court which holds that probable cause does not exist under these specific circumstances for each of these crimes. *See D.C. v. Wesby*, 138 S. Ct. 577, 590 (2018) ("we have stressed the need to 'identify a case where an officer acting under similar circumstances . . . was held to have violated the Fourth Amendment'") (quoting *White v.* Pauly, 137 S. Ct. 548, 552 (2017)). Edgar cannot meet that burden. The Officers are entitled to qualified immunity against Edgar's Fourth Amendment false arrest claim.

### 3. Count One does not state a Fourteenth Amendment equal protection claim and the Officers are entitled to qualified immunity.

Count One alleges the Officers used excessive force against Edgar in violation of the Fourteenth Amendment's equal protection clause. (Doc. 26 at 14, ¶¶ 121-22.) "Equal protection jurisprudence is typically concerned with governmental classification and treatment that affects some discrete and identifiable group of citizens differently from other groups." *Corey Airport*

*Servs., Inc. v. Clear Channel Outdoor, Inc.*, 682 F.3d 1293, 1296 (11th Cir. 2012). "In order to state an equal protection claim, the plaintiff must prove that he was discriminated against by establishing that other similarly-situated individuals outside of his protected class were treated more favorably." *Amnesty Int'l v. Battle,* 559 F.3d 1170, 1180 (11th Cir. 2009). In the selective enforcement context, a complaint must plead factual allegations that plausibly demonstrate "both discriminatory effect and discriminatory purpose." *B.T. ex rel. Jackson v. Battle*, No. 21-10318, 2021 WL 4147087, at *3 (11th Cir. Sept. 13, 2021).

To meet the discriminatory effect requirement, "a plaintiff must prove that a 'nearly identical' comparator received different treatment." *Rollins v. Board of Trs. of the Univ. of Ala.,* No. 14-14882, 2016 WL 1399375, at *12 (11th Cir. Apr. 11, 2016). "[A] similarly situated [person] is one that [the officer] witnessed engaging in behavior 'identical or virtually identical' to [the plaintiff's], but that [the officer] declined to arrest." *B.T. ex rel. Jackson v. Battle*, No. 21-10318, 2021 WL 4147087, at *4 (11th Cir. Sept. 13, 2021). Edgar's equal protection claim fails because he does not identify a similarly situated comparator who received more favorable treatment.

"Additionally, proof of discriminatory intent or purpose is a necessary prerequisite to any Equal Protection Clause claim." *Parks v. City of Warner Robins,* 43 F.3d 609, 616 (11th Cir. 1995). "'Discriminatory purpose' . . . implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979). Edgar's equal protection claim also fails because he does not plead factual allegations which plausibly demonstrate that the Officers acted with a discriminatory purpose.

Because Edgar does not meet the pleading requirements for an equal protection claim, he has not demonstrated a plausible constitutional violation, much less a violation of clearly established law. The Officers are entitled to qualified immunity against Count One's equal protection claim. *See Chandler v. Sec'y of Fla. Dep't of Transp.*, 695 F.3d 1194, 1198 (11th Cir. 2012) ("To survive a motion to dismiss based upon qualified immunity, the plaintiff must have alleged sufficient facts to support a finding of a constitutional violation of a clearly established law.").

### 4.   The amended complaint does not plead a Fourth Amendment excessive force claim and the Officers are entitled to qualified immunity.

Although Count One alleges the Officers' "use of force under these circumstances was excessive," (Doc. 26 at 14, ¶ 121), Count One expressly asserts its excessive force claim under the Fourteenth Amendment's equal protection clause, not the Fourth Amendment. (Doc. 26 at 14, ¶ 122.) The amended complaint does not plead an excessive force claim under the Fourth Amendment. (Doc. 26.)

### a)   The Court cannot infer a Fourth Amendment excessive force claim on Edgar's behalf.

"The plaintiff is the master of the complaint. The plaintiff selects the claims that will be alleged in the complaint." *United States v. Jones*, 125 F.3d 1418, 1428 (11th Cir. 1997). The Court cannot infer a Fourth Amendment excessive force claim on Edgar's behalf because courts "may not infer claims other than those that plainly appear on the face of the complaint." *Patel v. Lanier Cnty.*, 969 F.3d 1173, 1182 n.6 (11th Cir. 2020). "To prevail on a particular theory of liability, a party must present that argument to the district court. Our adversarial system requires it; district courts cannot concoct or resurrect arguments neither made nor advanced by the parties." *Fils v. City of Aventura*, 647 F.3d 1272, 1284 (11th Cir. 2011) (citation omitted). "Were we to parse the amended complaint in search of a potentially valid claim, we would give the appearance of

lawyering for one side of the controversy and, in the process, cast our impartiality in doubt." *Jackson v. Bank of Am., N.A.*, 898 F. 3d 1348, 1355, n.6 (11th Cir. 2018). In an abundance of caution, however, the Defendants address a potential Fourth Amendment excessive force claim while insisting that the amended complaint does not assert one.

> **b)** **Edgar did not plausibly demonstrate that the Officers used constitutionally unreasonable force.**

"The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the right to be free from the use of excessive force in the course of an arrest." *Johnson v. City of Miami Beach*, 18 F.4th 1267, 1272 (11th Cir. 2021). "A law enforcement officer's right to arrest necessarily carries with it the ability to use some force in making the arrest." *Brown v. City of Huntsville*, 608 F.3d 724, 740 (11th Cir. 2010). "Indeed, in this Circuit, we recognize that the typical arrest may involve some force and injury." *Merricks v. Adkisson*, 785 F.3d 553, 560 (11th Cir. 2015). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). The amended complaint does not satisfy Edgar's burden to plausibly demonstrate that the Officers used constitutionally unreasonable force.

The Officers used only reasonable force to overcome Edgar's active resistance. Edgar's "resistance was active resistance because he actively navigated his arms and body away from [the Officers] in order to avoid being properly handcuffed." *Charles v. Johnson*, 18 F.4th 686, 701 (11th Cir. 2021). Indeed, "it was reasonable for [the] Officers to perceive [Edgar's] failure to present his hand[s] to be handcuffed as a sign of intentional resistance." *Baker v. Clements*, 760 F. App'x 954, 958 (11th Cir. 2019). "Law enforcement officers may use physical force to subdue an arrestee when he fails to comply with orders to lie still during handcuffing." *Carpenter v. Gage*, 686 F.3d 644, 649 (8th Cir. 2012).

The use of force during Edgar's arrest was limited to drive stun Taser applications that were administered while the Officers wrestled Edgar's hands behind his back. (Ex. 2 at 10:41 to 12:33.) "[T]he 'drive stun' mode" is "a less potent application of the taser device that is only intended to stun the target." *Charles v. Johnson*, 18 F.4th 686, 693 (11th Cir. 2021). "Drive stun mode tasing does not cause serious physical injury." *Cantu v. City of Dothan*, 974 F.3d 1217, 1220 (11th Cir. 2020).

When Edgar physically resisted the Officers and held his arms under his body to prevent the Officers from handcuffing him, the Officers were justified to use the Taser. *See United States v. Morgan*, 855 F.3d 1122, 1128 (10th Cir. 2017) ("once Morgan refused to comply with the officers' orders to remove his hands from beneath him, the officers were justified in tasering Morgan to handcuff him"); *Rudlaff v. Gillispie*, 791 F.3d 638, 641 (6th Cir. 2015) ("it is *not* excessive force for the police to tase someone (even multiple times) when the person is actively resisting arrest"). Indeed, "the use of a taser multiple times on an [arrestee] does not constitute excessive force where an [arrestee] refuses to follow an officer's verbal commands and physically resists an officer who is attempting to bring the [arrestee] into compliance." *Ireland v. Prummell*, 53 F.4th 1274, 1302 (11th Cir. 2022) (applying objective reasonableness standard and granting qualified immunity to corrections officers for nine Taser applications against pretrial detainee who died after use of force).

In *Charles v. Johnson*, 18 F.4th 686, 700-01 (11th Cir. 2021), the Eleventh Circuit held officers did not violate the Fourth Amendment when they tackled and applied a Taser to a suspect who actively resisted handcuffing. In Edgar's case, the Officers used the Taser only intermittently and only to the extent necessary to overcome Edgar's active resistance. (Ex. 2 at 10:41 to 12:33.) The Officers did not use *any* force against Edgar after the second handcuff was applied. (Ex. 2 at

12:33.) The Eleventh Circuit "has . . . held that an officer's use of force against a suspect who is resisting and not subdued is not excessive." *Marantes v. Miami-Dade Cnty.*, 776 F. App'x 654, 664 (11th Cir. 2019). Edgar did not plausibly demonstrate that the Officers used constitutionally unreasonable force.

> **c)    Edgar did not plausibly demonstrate that the Officers' use of force violated a clearly established Fourth Amendment right.**

To defeat the qualified immunity defense, Edgar must show that controlling precedent prohibited the Officers from arresting him "in this manner." *See City of Escondido v. Emmons*, 139 S. Ct. 500, 503-04 (2019) ("The Court of Appeals failed to properly analyze whether clearly established law barred Officer Craig from stopping and taking down Marty Emmons *in this manner* . . . .") (emphasis added). "Use of excessive force is an area of the law in which the result depends very much on the facts of each case, and thus police officers are entitled to qualified immunity *unless existing precedent squarely governs <u>the specific facts at issue</u>.*" *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019)) (emphasis added) (quoting *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018)). The Officers are entitled to qualified immunity because Edgar cannot identify controlling precedent which would have alerted every reasonable police officer that the Officers could not arrest him in this manner.

> **5.    Count Four does not state a Fourteenth Amendment medical deprivation claim and the Officers are entitled to qualified immunity.**

Count Four asserts a § 1983 medical deprivation claim against the Officers, presumably under the Fourteenth Amendment. (Doc. 26 at 16-17, ¶¶ 138-49.) The Court should dismiss the medical deprivation claim because the amended complaint does not plausibly demonstrate a Fourteenth Amendment violation, much less a clearly established one.

### a)  Edgar did not plausibly demonstrate that the Officers violated a Fourteenth Amendment right.

The Court should dismiss Count Four's medical deprivation claim for lack of a constitutional violation. "The Due Process Clause of the Fourteenth Amendment requires government officials to provide medical aid to individuals who have been injured during an arrest." *Wade v. Daniels*, 36 F.4th 1318 (11th Cir. 2022). "To prevail on a deliberate indifference to serious medical need claim, [Edgar] must show: (1) a serious medical need; (2) [the Officers'] deliberate indifference to that need; and (3) causation between that indifference and [Edgar's alleged] injury." *Mann v. Taser Int'l, Inc.,* 588 F.3d 1291, 1306-07 (11th Cir. 2009). Count Four does not meet any of these requirements.

"In our circuit, a serious medical need is considered 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir.1994)). Count Four does not allege Edgar had a medical condition that had been diagnosed by a physician as mandating treatment. (Doc. 26 at 16-17, ¶¶ 138-49.) Instead, Count Four alleges Edgar "had been tased four times, . . . was extremely sick, and . . . he had suffered other injuries including a contusion and an injury to his foot."[3] (Doc. 26 at 16, ¶ 139.)

First, the Taser applications. "The mere fact of being shot with a Taser gun does not itself show that the individual has sustained a 'serious medical need.'" *Alexander v. Dickerson*, No. CIV A 6:08CV404, 2009 WL 2244139, at *8 (E.D. Tex. July 27, 2009). Even if Edgar had alleged a Taser burn, he still could not demonstrate an objectively serious medical need. *See Hayward v.*

---

[3] Elsewhere the amended complaint alleges Edgar injured his ankle, not his foot. (Doc. 26 at 10, ¶ 82.)

*Kile*, No. CIV.A. CV607-068, 2009 WL 2045925, at *8 (S.D. Ga. June 12, 2009) (holding "taser burn" is not "an objectively serious medical need"),  *R. & R. adopted*, No. 607CV068, 2009 WL 2045923 (S.D. Ga. July 13, 2009).

Regarding the contusion on Edgar's nose, (Doc. 26 at 10, ¶ 79), "skin abrasions on [the] face" do not constitute "a serious need that require[s] medical attention." *Hinson v. Bias*, 927 F.3d 1103, 1122 (11th Cir. 2019); *see also Price v. Stewart*, No. 3:12-CV-49, 2014 WL 1158870, at *1 (M.D. Ga. Mar. 21, 2014) (holding "Plaintiff's injuries—a small knot on his head, bruises, and abrasions—did not constitute a serious medical need").

 Regarding the alleged "extreme[ ] sick[ness]," (Doc. 26 at 16, ¶ 139), Edgar does not describe any symptoms that enable the Court to determine whether that alleged need was serious. The Eleventh Circuit "has consistently held that conclusory allegations without specific supporting facts have no probative value." *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000) (quoting *Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985)).

Regarding the alleged foot or ankle injury, Edgar stood on both feet and both ankles without complaining immediately after his arrest, at the police station, and after he arrived at the Coffee County Jail.



After his arrest, Edgar bears weight on both feet and both ankles and does not complain of injury.
(Ex. 2 at 13:25)

At the police station, Edgar continued to bear his entire body weight on both feet and both ankles without complaining.



At the police station, Edgar bears his entire body weight on his left foot and left ankle and does not complain.
(Ex. 3 at 2:44)



At the police station, Edgar bears his entire body weight on his right foot and right ankle and does not complain.
(Ex. 3 at 2:48)

Edgar even disobeyed three orders to sit down. (Ex. 3 at 2:49 to 3:08.) Officer Brunson had to push Edgar into the car to get him off his feet. (Ex. 3 at 2:56 to 3:08.)

Edgar was still walking without a limp and bearing weight on both feet and both ankles when he arrived at the Coffee County Jail. (Ex. 3 at 18:09 to 18:16.)



Edgar walks into the jail without a limp.
(Ex. 3 at 18:11)

In light of the videos, the amended complaint does not plausibly allege a serious foot or ankle injury.

Count Four also fails because Edgar did not plausibly demonstrate deliberate indifference. The Eleventh Circuit has "synthesized [the] 'deliberate indifference' inquiry into four elements: (1) the official 'was aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' (2) the official 'actually drew that inference,' (3) the official 'disregarded the risk of serious harm,' and (4) the official's 'conduct amounted to more than gross negligence.'" *Ireland v. Prummell*, 53 F.4th 1274, 1287 (11th Cir. 2022) (quoting *Valderrama v. Rousseau,* 780

F.3d 1108, 1116 (11th Cir. 2015)). The videos prove Edgar did not injure his foot or his ankle in the Officers' presence, had no objective sign of a foot or ankle injury, and never complained about an injury. (Ex. 3 at 03:21 to 21:18.) And Edgar pleaded no factual allegations which even remotely suggest that any of his other alleged conditions (the sickness, the Taser exposures, or the contusion) were serious. The Court should dismiss the medical deprivation claim because Edgar did not plausibly demonstrate that any of the Officers were aware of "'facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]' [and] 'actually drew that inference.'" *Ireland*, 53 F.4th at 1287.

The Court should also dismiss the medical deprivation claim because Edgar did not plausibly demonstrate that the Officers "'disregarded [a] risk of serious harm,' [through] 'conduct [which] amounted to more than gross negligence.'" *Ireland*, 53 F.4th at 1287 The exhibits prove Edgar received at least eleven chances to go to the hospital before his arrest. (Ex. 1 at 2-3; Ex. 1 at 3; Ex. 2 at 00:21 to 00:26; Ex. 2 at 00:37 to 00:51; Ex. 2 at 03:11 to 03:16; Ex. 2 at 03:20 to 03:26; Ex. 2 at 04:18 to 04:23; Ex. 2 at 05:05 to 05:11; Ex. 2 at 05:47 to 06:24; Ex. 2 at 08:13 to 08:17; Ex. 2 at 08:44 to 08:46.)

Edgar had two medics and an ambulance in front of him immediately after his arrest.



Two medics and an ambulance are present during Edgar's arrest.
(Ex. 2 at 12:40)

After the struggle, Edgar stood directly in front of the medics and the ambulance and did not ask for medical assistance. (Ex. 2 at 12:57.)



After his arrest Edgar looks directly at a medic and does not ask for medical attention.
(Ex. 2 at 12:57)

Finally, Officer Brunson left Edgar in the care of a nurse at the Coffee County Jail. (Ex. 3 at 24:07.)



Officer Brunson briefs the nurse on Edgar's medical condition.
(Ex. 3 at 24:19)

Even the amended complaint admits "Edgar refused to go to the hospital, which the officers were erroneously telling him he had to do." (Doc. 26 at 14, ¶ 119.) The amended complaint and the videos prove the Officers were *not* indifferent to Edgar's health.

Finally, Edgar cannot plausibly demonstrate causation. Count Four does not plead factual allegations which plausibly demonstrate "the detrimental effect of delay in medical treatment." *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1188 (11th Cir. 1994), *overruled in part on other grounds by Hope v. Pelzer*, 536 U.S. 730, 739 n.99 (2002). To prevail on a medical deprivation claim, Edgar must demonstrate "causation between [the Officers' alleged deliberate] indifference and [Edgar's] injury." *Mann v. Taser Int'l, Inc.,* 588 F.3d 1291, 1306-07 (11th Cir. 2009). "Because [Edgar] [makes] no [non-conclusory allegation of] additional harm caused by [any alleged] delay in treatment[,] [his] deliberate indifference to medical needs claim[ ] fails." *Bowers v. Gomez*, 178 F.3d 1299, at *1 (9th Cir. 1999). For all these reasons, Count Four does not plausibly demonstrate a constitutional violation.

      **b)**     **Edgar did not plausibly demonstrate that the Officers violated a Fourteenth Amendment right that was clearly established.**

Count Four also does not plausibly demonstrate the violation of a right that was clearly established. "Judicial decisions addressing deliberate indifference to a serious medical need, like decisions in the Fourth Amendment search-and-seizure realm, are very fact specific." *Youmans v. Gagnon*, 626 F.3d 557, 564 (11th Cir. 2010). Edgar cannot meet his burden to identify controlling precedent which clearly establishes that the Officers' conduct manifested deliberate indifference to a serious medical need under these specific facts. *See Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018) ("police officers are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue"). "It is not enough that a rule be suggested by then-existing precedent; the 'rule's contours must be so well defined that it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *City of Tahlequah v. Bond*, 142 S. Ct. 9, 11 (2021) (quoting *D.C. v. Wesby*, 138 S. Ct. 577, 590 (2018)). Because Edgar cannot meet his qualified immunity burden as to each officer, all three Officers are entitled to qualified immunity against Count Four's medical deprivation claim.

**E.**    **The State Law Claims**

First, this section explains why the Officers may invoke peace officer immunity. Next, this section addresses Edgar's state law claims.

**1.**    **The Officers may invoke peace officer immunity because they acted within their discretionary authority.**

Under Alabama Code § 6-5-338, the Officers invoke peace officer immunity against all state law claims:

> (a) Every peace officer . . . shall have immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties.

(b) This section is intended to extend immunity only to peace officers and governmental units or agencies authorized to appoint peace officers.

Ala. Code § 6-5-338(a)-(b).

The Officers qualify for peace officer immunity under § 6-5-338(a). The complaint alleges Officers Brunson, Spence, and Tew were "officer[s] with the Elba Police Department and [were] acting under the color of law." (Doc. 26 at 2-3, ¶¶ 5-7.) A municipal police officer "qualifies as a peace officer for purposes of § 6-5-338." *Borders v. City of Huntsville*, 875 So.2d 1168, 1178 (Ala. 2003). Accordingly, the Officers may invoke peace officer immunity.

The *Cranman* standard for State-agent immunity governs peace officer immunity under § 6-5-338. *See Hollis v. City of Brighton*, 885 So. 2d 135, 143 (Ala. 2004) ("Whether a qualified peace officer is due § 6-5-338(a) immunity is . . . judged by the restatement of State-agent immunity articulated by *Ex parte Cranman*, 792 So. 2d 392 (Ala. 2000), and adopted by a majority of this Court in *Ex parte Butts*, 775 So. 2d 173 (Ala. 2000).").[4] As modified by *Hollis v. City of Brighton*, the *Cranman* standard holds:

> A State agent shall be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent's
>
> . . .
>
> (4) exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons, or serving as peace officers under circumstances entitling such officers to immunity pursuant to § 6-5-338(a), Ala. Code 1975;
>
> . . .

---

[4] The Officers also qualify for common law State-agent immunity under *Cranman*. *See Ex parte Gilland*, 274 So. 3d 976, 982 (Ala. 2018) ("Immunity applies to employees of municipalities in the same manner that immunity applies to employees of the State.") (quoting *City of Birmingham v. Brown*, 969 So.2d 910, 916 (Ala. 2007)).

Notwithstanding anything to the contrary in the foregoing statement of the rule, a State agent shall not be immune from civil liability in his or her personal capacity

(1) when the Constitution or laws of the United States, or the Constitution of this State, or laws, rules, or regulations of this State enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise; or

(2) when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law.

*Ex parte Cranman*, 792 So. 2d 392, 405 (Ala. 2000) (Category 4 modified by *Hollis v. City of Brighton*, 950 So. 2d 300, 309 (Ala. 2006)).

"In order to claim State-agent immunity, a State agent bears the burden of demonstrating that the plaintiff's claims arise from a function that would entitle the State agent to immunity." *Ex parte Est. of Reynolds*, 946 So. 2d 450, 452 (Ala. 2006). The amended complaint alleges the Officers arrested Edgar. (Doc. 1 at 7, ¶ 45.) Because "[t]he *Cranman* standard answers in the affirmative the question whether arresting a person is an exercise of judgment—a 'discretionary function'—and therefore clothes the officer in State-agent immunity," the Officers meet their burden to invoke peace officer immunity. *Swan v. City of Hueytown*, 920 So. 2d 1075, 1079 (Ala. 2005).[5] Accordingly, "the burden shifts to [Edgar] to demonstrate that [the Officers] acted in bad faith, with malice or willfulness in order to deny them immunity." *Sheth v. Webster*, 145 F.3d 1231, 1238-39 (11th Cir. 1998). Edgar cannot meet that burden. "[B]are assertions" that a public official acted "willfully and maliciously . . . are conclusory and not entitled to be assumed true." *Ashcroft v. Iqbal*, 556 U.S. 662, 680-81 (2009).

---

[5] Also, a determination that a police officer acted within the officer's discretionary authority for qualified immunity under federal law precludes a plaintiff from re-litigating the discretionary authority requirement for peace officer immunity under state law. *See Lightfoot v. Floyd*, 667 So. 2d 56, 63-64 and n.3 (Ala. 1995).

2.      **Count Three does not state a claim for assault-and-battery and the Officers are entitled to peace officer immunity.**

Count Three asserts a state law assault-and-battery claim against the Officers. (Doc. 26 at 15, Count Three's heading.) Count Three does not state a claim upon which relief can be granted and the Officers are entitled to peace officer immunity.

a)      **Count Three does not plead factual allegations that plausibly demonstrate assault-and-battery.**

Count Three does not plead factual allegations that plausibly demonstrate assault-and-battery. "The plaintiff in an action alleging assault and battery must prove (1) that the defendant touched the plaintiff; (2) that the defendant intended to touch the plaintiff; and (3) that the touching was conducted in a harmful or offensive manner." *Walker v. City of Huntsville*, 62 So. 3d 474, 494 (Ala. 2010) (quoting *Harper v. Winston Cnty.*, 892 So. 2d 346, 353 (Ala.2004)). "In making [an] arrest, [however,] a police officer may use reasonable force and may be held liable only if more force is used than is necessary to effectuate the arrest." *Franklin v. City of Huntsville*, 670 So. 2d 848, 852 (Ala. 1995). Because none of the Officers used force that was constitutionally unreasonable under the Fourth Amendment, *see, supra*, § III.D.4, Count Three does not state a viable assault-and-battery claim under state law. *See Walker v. City of Huntsville*, 62 So. 3d 474, 494 (Ala. 2010) (applying doctrine of collateral estoppel and holding question of whether police officer committed assault-and-battery under state law is identical to question of whether officer used reasonable force under Fourth Amendment). The Court should dismiss Count Three for failure to state a claim.

> **b)** **The Officers are entitled to peace officer immunity because Count Three does not state an assault-and-battery claim upon which relief can be granted and because Edgar did not plausibly demonstrate that an exception to immunity applies.**

The Officers are entitled to peace officer immunity against the assault-and-battery claim. First, the Officers are entitled to peace officer immunity because Count Three does not state an underlying tort claim. *See Tinker v. Beasley*, 429 F.3d 1324, 1329-30 (11th Cir. 2005) (exercising appellate jurisdiction to entertain argument that plaintiff did not state underlying tort claim as component of peace officer immunity defense). For the reasons explained in the preceding subsection, the Officers also ask the Court to grant them peace officer immunity against the state law assault-and-battery claim.

The Officers are also entitled to peace officer immunity against Count Three's assault-and-battery claim because Edgar cannot show that an exception to peace officer immunity applies. Edgar has the burden "to demonstrate that the [Officers] acted 'willfully, maliciously, fraudulently, in bad faith, beyond [their] authority, or under a mistaken interpretation of the law.'" *Ex parte City of Vestavia Hills*, No. 1210113, 2022 WL 1721484, at *3 (Ala. May 27, 2022) (quoting *Ex parte Cranman*, 792 So. 2d 392, 405 (Ala. 2000)).[6] The willfulness, malice, fraud, and bad faith exceptions require a plaintiff to show that the officer acted with "a design or purpose to inflict injury without reasonable justification." *Ex parte Greg Pinkard*, No. 1200658, 2022 WL 1721483, at *7 (Ala. May 27, 2022). Edgar cannot make that showing. Conclusory allegations of exceptions to peace officer immunity "carry no weight." *McCullough v. Finley*, 907 F.3d 1324, 1334 (11th Cir. 2018).

---

[6] Unpublished Alabama Supreme Court opinions are binding precedent. *See* Ala. R. App. P. 53(e) ("An opinion of the Supreme Court shall not be published while an application for rehearing is pending . . . . However, the delay in publication caused by this provision shall not affect the precedential value of an opinion.").

"The Alabama Supreme Court has largely equated qualified immunity with discretionary-function immunity, and so the same facts which establish an entitlement to qualified immunity may also establish that the officers are entitled to discretionary-function immunity." *Hunter v. City of Leeds*, 941 F.3d 1265, 1284 (11th Cir. 2019). The Officers are entitled to peace officer immunity against Edgar's assault-and-battery claim because Edgar cannot meet his burden to plausibly demonstrate that an exception to peace officer immunity should apply.

### 3. Count Seven does not state a wantonness claim and Officer Brunson is entitled to peace officer immunity.

Count Seven asserts a state law wantonness claim against Officer Brunson and fictitious defendants 1-5. (Doc. 16 at 21, ¶ 173.) Count Seven does not state a wantonness claim and Officer Brunson is entitled to peace officer immunity.

#### a) Count Seven does not plead factual allegations that plausibly demonstrate wantonness.

Count Seven does not state a plausible wantonness claim. "Wantonness is the doing of some act or the omission to do some act with reckless indifference that such act or omission will likely or probably result in injury." *IMAC Energy, Inc. v. Tittle*, 590 So. 2d 163, 169 (Ala. 1991). "A mere conclusory allegation is not sufficient when the actual facts will not support a reliable inference of wantonness." *Brown v. Smith*, 813 F.2d 1187, 1190 n.4 (11th Cir. 1987). The Court should dismiss Count Seven because it improperly requires the Court to scour the complaint in search of facts to support a wantonness claim. *See Jackson v. Bank of Am., N.A.*, 898 F. 3d 1348, 1355, n.6 (11th Cir. 2018) ("Were we to parse the amended complaint in search of a potentially valid claim, we would give the appearance of lawyering for one side of the controversy and, in the process, cast our impartiality in doubt."); *Dinkins v. Charoen Pokphand USA, Inc.*, 133 F. Supp 2d 1254, 1261 (M.D. Ala. 2001) ("Shotgun pleadings are not allowed; a lawsuit is not a game of hunt the peanut."); *Yates v. NaphCare, Inc.*, No. 2:12-CV-01725-JCM, 2014 WL 2155224, at *4

(D. Nev. May 22, 2014) ("If plaintiff does not state a claim within the body of the counts themselves based upon specific allegations of individual involvement by a particular defendant . . . the claims against that defendant will be dismissed.").

Edgar previously conceded that his wantonness claim does not meet the Rule 8 standard. Paragraph 174 of Edgar's amended complaint is identical to paragraph 135 of Edgar's original complaint: "By consciously doing and/or not doing the acts set-forth above, the Defendants subjectively knew that injury would likely or probably result to Edgar or someone in a substantially similar position. Their conduct was wanton, reckless, and oppressive." (*Compare* Doc. 26 at 21-22, ¶ 174 *with* Doc. 1 at 17, ¶ 135.) When the Defendants moved to dismiss the original complaint's wantonness claim, they argued, "that count contains only a conclusory allegation of wantonness." (Doc. 14 at 48.) In his response, Edgar agreed with the Defendants. (Doc. 21 at 32.) Edgar wrote, "Defendant [sic] also alleges and has an argument that Plaintiff has not sufficiently articulated which of the paragraphs above relate to the Wantonness [sic] claim. *Plaintiff concedes this issue* and will seek leave of Court to amend to *spell out with specificity* which paragraphs alleged relate to the wantonness claim." (Doc. 21 at 32 (emphases added).) Based in part on Edgar's promise to "spell out with specificity" his wantonness claim, (Doc. 21 at 32), the Court granted Edgar leave to amend. (Doc. 25 at 1, ¶ 1.) Edgar then realleged verbatim the same defective wantonness claim that he previously conceded is not viable. (Doc. 26 at 21-22, ¶¶ 172-75.) The Court should dismiss Edgar's wantonness claim with prejudice.

> **b)      Officer Brunson is entitled to peace officer immunity because Count Seven does not state a wantonness claim upon which relief can be granted and because Edgar did not plausibly demonstrate that an exception to immunity applies.**

Peace officer immunity bars the wantonness claim against Officer Brunson. As with the assault-and-battery claim, Officer Brunson is entitled to peace officer immunity against the

wantonness claim because Count Seven does not state an underlying tort claim upon which relief can be granted. *See Tinker v. Beasley*, 429 F.3d 1324, 1329-30 (11th Cir. 2005) (exercising appellate jurisdiction to entertain argument that plaintiff did not state underlying tort claim as component of peace officer immunity defense).

The Court should also dismiss Count Seven because peace officer immunity bars wantonness claims. *See Norris v. City of Montgomery*, 821 So. 2d 149, 156 (Ala. 2001) ("Even more significantly, § 6-5-338(a), which immunizes peace officers from tort liability for conduct involving the exercise of discretion, makes no exception for wantonness.").

## F.     The City of Elba

The amended complaint does not plead a claim against the City. Except for Count Seven, each count's heading specifies the defendants against which that count asserts its claim—none of the counts name the City. (Doc. 26 at 13-21.) And paragraph 173 specifies that Count Seven only sues "[Officer] Brunson and Does 1-5." (Doc. 26 at 21, ¶ 173.) Because none of the counts plead a claim against the City, the Court should dismiss the City from this action. *See Mason v. City of Philadelphia*, No. CIV.A. 13-5163, 2014 WL 4722640, at *5 (E.D. Pa. Sept. 22, 2014) ("[T]he Complaint fails to even mention the names of any of these individuals in any of its Counts. Accordingly, [these defendants] are all dismissed from this action.").

### 1.     Even if Edgar had asserted a claim against the City, the City would be entitled to municipal immunity against punitive damages.

If Edgar had asserted a state or federal claim against the City, the City would be entitled to municipal immunity from punitive damages. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271, 101 S. Ct. 2748, 2762 (1981) ("we hold that a municipality is immune from punitive damages under 42 U.S.C. § 1983"); *Maldonado v. Town of Cottonwood*, No. 1:21-CV-645-ECM, 2022 WL 2673055, at *6 n.7 (M.D. Ala. July 11, 2022) (Marks, C.J.) ("Alabama law bars any

claim for punitive damages against municipalities."); *see also* Ala. Code § 6-11-26 ("Punitive damages may not be awarded against the State of Alabama or any . . . municipality thereof . . . .").

### 2.     Counts One, Two, and Four do not state § 1983 municipal liability claims.

Even if Edgar had named the City in his federal counts—Counts One, Two, and Four—none of those counts demonstrate a plausible basis upon which to impose municipal liability under § 1983. "The Supreme Court has placed strict limitations on municipal liability under § 1983." *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998). "A municipality may not be held liable under § 1983 solely because it employs a tortfeasor." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997). "To impose section 1983 liability on a municipality, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). Even if Edgar had asserted a § 1983 municipal liability claim against the City that claim would fail on all elements.

First, Edgar did not plausibly demonstrate an underlying constitutional violation. "Only when it is clear that a violation of specific rights has occurred can the question of § 1983 municipal liability for the injury arise." *Vineyard v. Cnty. of Murray*, 990 F.2d 1207, 1211 (11th Cir. 1993).

Second, Edgar did not plausibly demonstrate the existence of a municipal custom or policy. "A plaintiff seeking to impose liability on a municipality for injuries its employees or agents have inflicted must show that the plaintiff suffered injuries inflicted pursuant to an official government policy or custom." *Brown v. City of Hialeah*, 30 F.3d 1433, 1438 (11th Cir. 1994). "If plaintiff fails to allege an official policy or custom, then his claim against the municipality is subject to dismissal." *Rogers v. City of Selma*, 178 F. Supp. 3d 1222, 1244 (S.D. Ala. 2016). Edgar did not allege an official policy or custom.

Third, Edgar did not plausibly demonstrate deliberate indifference. "Congress did not intend municipalities to be held liable unless *deliberate* action attributable to the municipality directly caused a deprivation of federal rights." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 415 (1997). "'Deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 410 (1997). Edgar did not plead factual allegations that show deliberate indifference.

Moreover, deliberate indifference cannot exist when the Officers did not violate clearly established law. *See Anderson ex rel. Anderson v. City of Minneapolis*, 934 F.3d 876, 884 (8th Cir. 2019) ("Municipalities cannot exhibit fault rising to the level of *deliberate* indifference to a constitutional right when that right has not yet been clearly established.") (internal punctuation omitted), *cert. denied sub nom. Anderson v. Minneapolis*, 141 S. Ct. 110 (2020).

Finally, "[a] municipality can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). Edgar did not plausibly demonstrate causation. Because Edgar did not plead factual allegations that plausibly demonstrate the elements of a § 1983 municipal liability claim, a municipal liability claim would not be viable even if Edgar had asserted one.

### 3. Even if Edgar had asserted a state law claim against the City, the City would not be liable because the Officers did not commit an underlying tort.

Because Counts Three and Seven do not state underlying tort claims against the Officers, the City could not be vicariously liable on those claims. *See Hollis v. City of Brighton*, 885 So. 2d 135, 141-42 (Ala. 2004) ("The vicarious liability of a putative master under the rule of respondeat superior depends upon the liability of the putative servant.").

4. **Even if Edgar had asserted a state law claim against the City, the City would be entitled to peace officer immunity.**

Even if Edgar had pleaded state law claims against the City, the City would be entitled to peace officer immunity because "Alabama's statutory, discretionary function immunity explicitly extends an officer's immunity to the employing municipality." *Brown v. City of Huntsville*, 608 F.3d 724, 742 (11th Cir. 2010) (citing Ala. Code § 6-5-338(b) (1975)). Because the Officers are entitled to peace officer immunity against Edgar's state law claims, the City shares their immunity. *See Howard v. City of Atmore*, 887 So. 2d 201, 211 (Ala. 2003) ("It is well established that, if a municipal peace officer is immune pursuant to § 6-5-338(a), then, pursuant to § 6-5-338(b), the city by which he is employed is also immune.").

5. **Even if Edgar had asserted a state law claim against the City, the City would be entitled to municipal immunity.**

Under Alabama Code § 11-47-190, the City would also be entitled to municipal immunity if Edgar had asserted assault-and-battery and wantonness claims against it:

> No city or town shall be liable for damages for injury done to or wrong suffered by any person or corporation, unless such injury or wrong was done or suffered through the *neglect, carelessness or unskillfulness* of some agent, officer or employee of the municipality engaged in work therefor and while acting in the line of his or her duty . . . .

Ala. Code § 11-47-190 (emphasis added). "This statute limits a municipality's liability for the acts of its agent to those acts that are negligent, careless, or unskillful." *Ex parte City of Tuskegee*, 932 So. 2d 895, 910 (Ala. 2005). Section 11-47-190 would bar state law assault-and-battery and wantonness claims against the City. *See Brown v. City of Huntsville*, 508 F.3d 724, 742-43 (11th Cir. 2010) (holding § 11-47-190 bars assault-and-battery claim when officer's use of force was intentional); *Town of Loxley v. Coleman*, 720 So. 2d 907, 909 (Ala. 1998) ("This Court has construed § 11-47-190 to exclude liability for wanton misconduct.").

# IV.    Conclusion

The Court granted Edgar leave to amend to cure two specific defects that he promised to address: (1) to identify the nurse in whose care Officer Brunson left Edgar at the jail, (Doc. 21 at 9; Doc. 25 at 1, ¶ 1), and (2) "to spell out with specificity" the facts upon which Edgar based his wantonness claim. (Doc. 21 at 32; Doc. 25 at 1, ¶ 1.) Edgar did not even try to eliminate either defect. Instead, he forced the Defendants to brief another motion to dismiss to address the same defects Edgar told the Court he would fix.

As in Edgar's original complaint, the amended complaint's fictitious party claims are still procedurally improper. The amended complaint still does not state a claim against any of the Defendants upon which relief can be granted. The Officers are entitled to qualified immunity against all federal claims. All of the Defendants are entitled to peace officer immunity under Alabama Code § 6-5-338. The City is entitled to municipal immunity under Alabama Code § 11-47-190. The City is also entitled to municipal immunity against all punitive damages claims under state and federal law. Edgar has received two opportunities to plead a viable claim. The Defendants ask the Court to dismiss this action with prejudice.

/s/ James H. Pike
James H. Pike
Alabama State Bar Number ASB-5168-P63J
SHEALY, PIKE & HORNSBY
P.O. Box 6346
Dothan, Alabama 36302-6346
Telephone (334) 677-3000
Facsimile (334) 677-0030
jpike@shealypikelaw.com

*Attorney for Defendants Marion B. Brunson, Justin A. Spence, Anthony Tew, and the City of Elba*

**Certificate of Service**

I, James H. Pike, certify that on July 6, 2023, I electronically served this document, via the

CM/ECF system, upon:

Kira Fonteneau
BARRETT & FARAHANY
2 20th Street North, Suite 900
Birmingham, Alabama 35203

*/s/ James H. Pike*
James H. Pike